IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | |
|---|---|
| THE STATE OF ARIZONA, | ) |
| | ) |
| Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| GLENDA LORRAINE RUMSEY, | ) |
| | ) |
| Appellant. | ) |
| | ) |

2 CA-CR 2009-0041
DEPARTMENT B

O P I N I O N

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20080258

Honorable Richard S. Fields, Judge

AFFIRMED IN PART; VACATED IN PART

Terry Goddard, Arizona Attorney General
  By Kent E. Cattani and Amy M. Thorson                                          Tucson
                                                                   Attorneys for Appellee

Robert J. Hirsh, Pima County Public Defender
  By Michael J. Miller                                                           Tucson
                                                                   Attorneys for Appellant

V Á S Q U E Z, Presiding Judge.

¶1 In this opinion we address whether the trial court erred by not suppressing evidence of blood-test results after concluding the defendant's right to counsel had been violated at the time the blood draw occurred. For the reasons that follow, we conclude the court did not so err and affirm its ruling on that issue.[1]

**Facts and Procedure**

¶2 We view the facts in the light most favorable to sustaining the jury's verdicts. *State v. Miles*, 211 Ariz. 475, ¶ 2, 123 P.3d 669, 670 (App. 2005). On the evening of January 12, 2008, J. and O. were riding their bicycles in the eastbound bicycle lane on Broadway Boulevard in Tucson. After crossing Vozack Lane, O. felt something hit him and then saw J. "flying in front of [him]." O. got up from the ground and ran to J., who was unresponsive. O. looked around and saw a "small SUV or a car, a few yards maybe, in front of [them.] . . . [I]t was red, [and] driving off." J. died as the result of head injuries, and O. suffered a dislocated tailbone, bruises, and scratches.

¶3 Glenda Rumsey, the driver of the vehicle that had struck J., stopped her vehicle and walked back to the accident scene, where she remained until police officers arrived. The officers noticed Rumsey had an odor of alcohol and was unable to walk straight. One officer administered the horizontal gaze nystagmus (HGN) test, and Rumsey displayed six out of six possible cues of impairment. She was arrested and charged with manslaughter, aggravated assault of a minor under fifteen years of age,

---

[1]Appellant has raised additional issues that we have addressed in a separately filed memorandum decision in which we have vacated her conviction for driving with an alcohol concentration greater than .08. *See* Ariz. R. Crim. P. 31.26; Ariz. R. Sup. Ct. 111(b), (h); *see also State v. Payne*, 223 Ariz. 555, ¶ 2, 225 P.3d 1131, 1134 (App. 2009).

driving under the influence of an intoxicant (DUI) while impaired to the slightest degree, driving with an alcohol concentration of .08 or more, driving while under the extreme influence of intoxicating liquor with an alcohol concentration of .15 or more, and leaving the scene after causing an accident resulting in death or serious physical injury. The jury acquitted her of leaving the scene of an accident, found her guilty of the remaining charges, and found the manslaughter and aggravated assault charges were dangerous-nature offenses. After an aggravation and mitigation hearing, the trial court sentenced Rumsey to concurrent, enhanced, partially aggravated terms of fourteen and thirteen years for manslaughter and aggravated assault respectively and to 180 days in jail for the DUI offenses. This timely appeal followed.

## Discussion

**¶4**        Rumsey argues the trial court erred in not suppressing the results of her blood tests despite finding Detective Barrett had violated her right to counsel before officers completed the first blood draw. Specifically, she contends this violation required suppression of the blood test results under Arizona law. Whether evidence should have been excluded as the result of a deprivation of counsel is "a mixed question of fact and law implicating constitutional questions. As such [the court's determination] is reviewed *de novo*." *State v. Hackman*, 189 Ariz. 505, 508, 943 P.2d 865, 868 (App. 1997). And we will affirm the trial court if it is correct for any reason. *State v. Cañez*, 202 Ariz. 133, ¶ 51, 42 P.3d 564, 582 (2002).

**¶5**        While at the accident scene, Rumsey spoke with her attorney by telephone for approximately six minutes and then informed an officer that the attorney would arrive

in about fifteen minutes. When he had not arrived within twenty minutes, Rumsey was taken to the police substation at 8:35 p.m. The attorney arrived at the accident scene approximately fifteen minutes later and agreed to follow Detective Barrett to the substation. En route, Barrett noticed the attorney had turned the opposite direction when Barrett had made a left turn. Barrett continued on to the substation and was notified at 9:27 p.m. that the attorney had arrived.

¶6 Meanwhile, around 9:10, Rumsey had consented to a blood draw. Before conducting the draw, Barrett decided to obtain a warrant for three separate blood draws, spaced one hour apart. The search warrant was issued at 9:26 p.m., served on Rumsey at 9:28, and the first blood draw occurred at 9:31, four minutes after Barrett had been informed that Rumsey's lawyer had arrived at the substation. Rumsey then consulted with counsel before the two subsequent blood draws.

## A. Violation of right to counsel

¶7 Before trial, Rumsey moved to suppress statements she had made during the initial blood draw and the results of all three blood tests, arguing they had been "obtained in violation of her right to counsel." The trial court found:

> The real interference with the right to counsel arises when Barrett tells Rumsey, at about 9:10 p.m., you can "talk to [counsel] after the first blood draw[.]" . . . That statement is made twenty minutes before the first blood draw and before Barrett had even attempted the search warrant call to the Judge. . . . And, Barrett testified that he knew [the attorney] was there at 9:27 p.m. Notwithstanding Barrett's wish to conclude the search warrant call and blood draw, there is no reason [the attorney] could not have been given a minute or two with Rumsey prior to the blood draw. The urgency of the

4

timing of the blood draw is lessened when one considers that Rumsey consented to give blood at 9:10 p.m.

. . . .

. . . It is the State's duty to prove that the exercise [of the right to counsel] would unduly interfere with the investigation. The State did not.

¶8 Rule 6.1, Ariz. R. Crim. P., provides that a suspect is entitled to the advice of counsel "as soon as feasible after [he or she] is taken into custody." "[I]t is only when the exercise of that right will hinder an ongoing investigation that the right to an attorney must give way in time and place to the investigation by the police." *Kunzler v. Superior Court*, 154 Ariz. 568, 569, 744 P.2d 669, 670 (1987). It is the state's burden to demonstrate that allowing the suspect to consult with counsel when requested would have disrupted the police investigation. *State v. Juarez*, 161 Ariz. 76, 81, 775 P.2d 1140, 1145 (1989).

¶9 In DUI-related investigations generally, "[i]nforming the driver that he may not call his attorney before taking [a blood or breath] test misstates the law and violates the driver's right to counsel." *Id*. However, that is not what happened in this case. Under the circumstances here, we disagree with the trial court that Barrett's statement to Rumsey at 9:10 p.m. deprived her of the right to counsel. As noted above, before the statement was made, officers already had honored Rumsey's request to speak with counsel at the accident scene. She was provided a cellular telephone and spoke with counsel for six minutes. After the attorney arrived at the accident scene, Barrett invited him to follow Barrett to the police substation. The attorney stated he would do so but

5

then did not. Consequently, neither Barrett nor any of the officers at the substation knew where he had gone and when, or even whether, he would arrive.[2] Additionally, Rumsey consented to the blood draw after having already spoken with counsel at the accident scene. And, when Barrett first learned at 9:27 p.m. that the attorney had arrived at the substation, he had by then obtained a warrant for the blood draw.

¶10 Although we disagree with the trial court's ruling that Barrett's statement at 9:10 amounted to a violation of Rumsey's right to counsel, we agree that she was denied that right after the attorney made his presence at the substation known. The state contends no violation occurred because it established that allowing Rumsey to consult with counsel after his arrival at the substation would have hindered the investigation.[3] In support of this argument, it cites testimony by the investigating detectives that "her blood

---

[2]Rumsey contends the record does not support the trial court's factual determination that the police had not willfully ignored the attorney's presence at the substation while he attempted to gain entrance. However, the attorney testified that, after arriving at the substation, he was unable to get the attention of anyone inside the building yet did not dial a telephone number posted on the building to reach a police dispatcher until thirty to forty-five minutes after he had arrived. And, Barrett testified that the attorney had failed to follow him to the substation and that he was unaware the attorney had finally arrived until receiving a call from a dispatcher at 9:27. This evidence was more than sufficient to support the trial court's findings. *See State v. Herrera*, 183 Ariz. 642, 648, 905 P.2d 1377, 1383 (App. 1995) (court's factual determinations reviewed for clear error).

[3]The state also argues Rumsey's right to counsel was not violated because she had been permitted at the scene to speak with counsel "by telephone for approximately six minutes, enough time for him to give her legal advice." However, we are aware of no authority, and the state has cited none, providing that an initial consultation with counsel is sufficient to cure a subsequent denial of further consultation. The only limitation our courts have put on the exercise of the right to counsel is that it may not interfere with the police investigation. *Kunzler*, 154 Ariz. at 569, 744 P.2d at 670.

6

alcohol concentration [wa]s diminishing the longer [they] st[oo]d there," "time was of the essence," and blood samples should be obtained "as quickly as possible."

¶11        However, these considerations apply in every DUI investigation in which blood alcohol evidence is sought. Nothing in the officers' testimony or the state's argument to the trial court suggested there were any exigent circumstances here necessitating taking Rumsey's blood immediately. Indeed, as the court noted, the argument that Rumsey's blood needed to be drawn "as quickly as possible" was undermined to some extent by Barrett's decision to delay the blood draw in order to obtain a warrant, despite the fact that Rumsey already had consented to the test. Barrett testified at the suppression hearing that "[o]btaining the search warrant was [his] first priority. Obtaining her blood, within a reasonable amount of time, was [his] second priority." Thus, we cannot say the court abused its discretion in concluding the state failed to meet its burden of establishing that its investigation would have been hindered by allowing Rumsey to consult with counsel before the blood draw.

**B. Remedy for violation of counsel**

¶12        We next must address the appropriate remedy for the violation of Rumsey's right to counsel. She argues that, under Arizona law, the automatic remedy for a violation of the right to counsel in DUI cases is dismissal of DUI charges and suppression of the blood test results and any additional evidence obtained after the violation pertaining to all other charges. Thus, she asserts, the trial court erred in suppressing only statements she had made "at and about the time of the first blood draw." The state counters that suppression of the blood evidence was not required because the blood draw

7

was conducted pursuant to a search warrant and there was no violation of Rumsey's due process right to collect exculpatory evidence. It asserts that Rumsey "asked for and received an independent [blood] test."

¶13    Generally, "[t]he exclusionary rule requires the suppression at trial of evidence gained directly or indirectly as a result of a government violation" of the defendant's constitutional rights. *Hackman*, 189 Ariz. at 508, 943 P.2d at 868. However, evidence need not be suppressed when "the connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint.'" *Wong Sun v. United States*, 371 U.S. 471, 487 (1963), *quoting Nardone v. United States*, 308 U.S. 338, 341 (1939); *State v. Rosengren*, 199 Ariz. 112, ¶ 22, 14 P.3d 303, 310 (App. 2000) (suppression required only when "causal connection exists between a constitutional violation and the government's obtaining of [the] evidence"); *see also State v. Moody*, 208 Ariz. 424, n.6, 94 P.3d 1119, 1141 n.6 (2004) (applying federal exclusionary-rule principles to violation of Rule 6.1 right to counsel).

¶14    Although Arizona courts have found "the exclusionary rule . . . as a matter of state law [to be] no broader than the federal rule," *State v. Bolt*, 142 Ariz. 260, 269, 689 P.2d 519, 528 (1984), in the context of DUI cases, we have endeavored to "assiduously protect[] the right to counsel" by liberally applying "stringent remedies, ranging from suppression of any evidence obtained after [a] violation [of the right to counsel] to outright dismissal of the action," *Rosengren*, 199 Ariz. 112, ¶ 27, 14 P.3d at 312. Without citation of authority, Rumsey asserts "the Arizona Supreme Court has stated that because it is impossible to say what advice may have been given" to a

defendant had the right to counsel been respected, "the [DUI] counts should . . . have been dismissed." And, she maintains, because the "Arizona Supreme [C]ourt requires that the DUI counts be dismissed when the right to counsel is violated, the logical conclusion is that the evidence is not admissible for any purpose" and should have been suppressed as to the manslaughter and aggravated assault charges as well.

¶15        Our case law provides that

> only when police conduct interferes with both the defendant's right to counsel and his ability to obtain exculpatory evidence is "[d]ismissal of the case with prejudice . . . the appropriate remedy because the state's action foreclosed a fair trial by preventing [the defendant] from collecting exculpatory evidence no longer available." Correspondingly, when the interference with the defendant's right to counsel does not impinge upon his ability to collect exculpatory evidence, the appropriate remedy is suppression.

*State v. Keyonnie*, 181 Ariz. 485, 487, 892 P.2d 205, 207 (App. 1995), *quoting McNutt v. Superior Court*, 133 Ariz. 7, 10, 648 P.2d 122, 125 (1982); *see State v. Holland*, 147 Ariz. 453, 456, 711 P.2d 592, 595 (1985) (dismissal); *Juarez*, 161 Ariz. at 81, 775 P.2d at 1145 (suppression); *Kunzler*, 154 Ariz. at 570, 744 P.2d at 671 (suppression). Thus, because Rumsey has not asserted the violation of her right to counsel here deprived her of any exculpatory evidence such that a fair trial was impossible, the trial court correctly concluded that dismissal of the DUI charges was not an appropriate remedy.[4] *McNutt*, 133 Ariz. at 10, 648 P.2d at 125; *Rosengren*, 199 Ariz. 112, ¶ 19, 14 P.3d at 309.

---

[4]In her reply brief, Rumsey notes there was a five-hour delay between the time of the accident and the time she received her independent blood test, and "[t]here was therefore no evidence that the independent blood draw was obtained before the evidence had vanished." To the extent Rumsey is arguing the delay in obtaining an independent

9

¶16    On the other hand, in every DUI case in which our courts have considered the remedy for a violation of the right to counsel, even when there has been no denial of the defendant's due process right to a fair trial, the results of any breath- or blood-alcohol testing have been suppressed as a consequence for the violation. *Juarez*, 161 Ariz. at 81, 775 P.2d at 1145; *Kunzler*, 154 Ariz. at 570, 744 P.2d at 671; *Rosengren*, 199 Ariz. 112, ¶ 19, 14 P.3d at 309; *Keyonnie*, 181 Ariz. at 487, 892 P.2d at 207. Rumsey maintains that the trial court should have done so here. But none of those prior cases compel the conclusion that every violation of the right to counsel in the DUI context automatically necessitates suppression of the test results; the general exclusionary rule survives— suppression is not required unless a nexus exists between the violation and the evidence obtained. *See Herring v. United States*, ___ U.S. ___, ___, 129 S. Ct. 695, 700 (2009) ("We have repeatedly rejected the argument that exclusion is a necessary consequence of a . . . violation [of a constitutional right]. Instead we have focused on the efficacy of the rule in deterring . . . violations in the future.") (citations omitted).

¶17    In each of the cases cited above, the defendant had requested and was denied the opportunity to speak with counsel before deciding whether to give a breath or blood sample voluntarily pursuant to Arizona's implied consent law, A.R.S. § 28-1321. Under § 28-1321(A), any

blood draw deprived her of the right to collect exculpatory evidence, she has raised this contention for the first time in the reply brief and has failed to provide any relevant argument or citation to authority. The argument therefore is waived. *See* Ariz. R. Crim. P. 31.13(c)(1)(vi); *State v. Guytan*, 192 Ariz. 514, ¶ 15, 968 P.2d 587, 593 (App. 1998) (arguments first raised in reply brief waived); *State v. Felkins*, 156 Ariz. 37, 38 n.1, 749 P.2d 946, 947 n.1 (App. 1988) (claim waived when supported by inadequate argument).

person who operates a motor vehicle in this state gives consent . . . to a test or tests of the person's blood, breath, urine or other bodily substance for the purpose of determining alcohol concentration . . . if the person is arrested for any offense arising out of acts alleged to have been committed . . . while the person was driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor.

And, upon arrest, the "violator shall be requested to submit to and successfully complete any test or tests prescribed by subsection A." § 28-1321(B). Failure to expressly consent to or successfully complete a requested test is deemed a refusal and automatically results in suspension of the person's driver's license for a minimum of twelve months. *Id.* And evidence of the defendant's refusal to take a test is admissible at trial "to show that the defendant was conscious of his guilt." *State v. Vannoy*, 177 Ariz. 206, 211, 866 P.2d 874, 879 (App. 1993).

¶18 Because a suspect must be arrested before the implied consent provisions are triggered, there is no dispute that he or she is entitled to counsel upon request. *See* Ariz. R. Crim. P. 6.1; *Kunzler*, 154 Ariz. at 570, 744 P.2d at 671. And, when a defendant is deprived of counsel at this point in the investigation, the defendant lacks counsel's advice about whether to submit to a breath or blood sample. *See Mack v. Cruikshank*, 196 Ariz. 541, ¶ 11, 2 P.3d 100, 104 (App. 1999) ("Although a DUI suspect does not have a 'right' to refuse to submit to a test, he or she does have the 'physical power' to refuse."). A sample thus obtained, whether pursuant to consent or a warrant, necessarily is tainted by the defendant's inability to have consulted counsel before making that decision. Under those circumstances, a nexus exists between the violation and the

11

evidence collected. Because under the most common scenarios such a nexus exists, our courts have concluded that suppressing the test results is generally required. *See Juarez*, 161 Ariz. at 81, 775 P.2d at 1145; *Rosengren*, 199 Ariz. 112, ¶ 19, 14 P.3d at 309; *Keyonnie*, 181 Ariz. at 487, 892 P.2d at 207. *But see Rosengren*, 199 Ariz. 112, ¶ 24, 14 P.3d at 311 (when defendant refused to consent to blood test after denial of right to counsel, sample obtained pursuant to warrant not subject to suppression under federal exclusionary rule).

¶19 This court's reasoning in *Rosengren* provides a helpful comparison assessing the application of the exclusionary rule in this case. There, after being arrested for DUI, the defendant asked several times to speak with counsel; when officers denied his requests, the defendant refused to consent to a blood draw. 199 Ariz. 112, ¶¶ 4-5, 14 P.3d at 306. Officers then obtained and executed a telephonic search warrant for his blood. *Id.* ¶ 6. Rosengren later moved for dismissal of all charges based on the violation of his right to counsel. *Id.* ¶ 7. The trial court denied the motion to dismiss but suppressed the blood-test results and additional evidence obtained after his request for counsel had been denied, and this court affirmed on appeal. *Id.*

¶20 In affirming the lower court's ruling, we concluded that the search warrant could not remedy the deprivation of counsel. *Id.* ¶ 30 (rejecting out-of-state case holding alcohol test results admissible despite violation of right to counsel on theory of inevitable discovery). We noted that "had Rosengren succumbed to the police pressure by voluntarily giving a blood sample after the officers violated his right to counsel, evidence of the blood test would have been suppressed." We therefore found it "incongruous to

12

allow the state to introduce the . . . test result when Rosengren resisted the officers'
tactics, refused to waive his rights, and ultimately had blood extracted pursuant to the
warrant." *Id.* Thus, in *Rosengren*, we declined to find the warrant valid when the
officers had "sought [it] to prevent the defendant from exercising his right to . . .
counsel," and, in doing so, had "subverted" his constitutional right to speak with an
attorney. *Moody*, 208 Ariz. 424, n.8, 94 P.3d at 1142 n.8.

¶21        Here, in contrast, before Rumsey's right to counsel had been violated,
officers already had permitted her to speak with an attorney. They had accommodated
her request at the accident scene by providing her a cellphone and waiting for twenty
minutes for the attorney to arrive before taking Rumsey to the substation. And,
notwithstanding Rumsey's eventual consent to the blood draw after her initial
consultation with counsel, Barrett nevertheless obtained the search warrant for the draw.
Unlike *Rosengren*, in which the basis for the warrant was Rosengren's refusal to consent
without the advice of counsel, the basis for obtaining the warrant here was not related in
any way to the subsequent violation of Rumsey's right to counsel. Nor can we say the
warrant was obtained in an attempt to thwart Rumsey's invocation of that right, as she
already had been permitted to exercise it. As the Supreme Court stated in *Herring*,
___U.S. at ___, 129 S. Ct. at 702:

> To trigger the exclusionary rule, police conduct must be
> sufficiently deliberate that exclusion can meaningfully deter
> it, and sufficiently culpable that such deterrence is worth the
> price paid by the justice system. As laid out in our cases, the
> exclusionary rule serves to deter deliberate, reckless, or
> grossly negligent conduct, or in some circumstances recurring

13

or systemic negligence.  The error in this case does not rise to that level.

¶22      In short, there was no nexus between the deprivation of Rumsey's right to counsel and the lawfully obtained blood evidence Rumsey sought to suppress.  The trial court did not err in denying her motion to suppress the blood evidence and in precluding only that evidence tainted by the violation—the statements Rumsey had made during the blood draw without the benefit of counsel.

### Disposition

¶23      Although we conclude Rumsey's right to counsel was violated at the time her blood was drawn, for the reasons set forth above, the trial court did not err in denying Rumsey's motion to suppress the results of the blood tests.

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge

CONCURRING:

/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Judge

/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge