IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee,*

*v.*

ESGARDO JAVIER NEVAREZ,
*Appellant.*

No. 2 CA-CR 2013-0065
Filed May 30, 2014

---

Appeal from the Superior Court in Pima County
No. CR20110420001
The Honorable Paul E. Tang, Judge

**AFFIRMED**

---

COUNSEL

Thomas C. Horne, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Amy Pignatella Cain, Assistant Attorney General, Tucson
*Counsel for Appellee*

Isabel G. Garcia, Pima County Legal Defender
By Alex Heveri, Assistant Legal Defender, Tucson
*Counsel for Appellant*

---

**OPINION**

---

Judge Espinosa authored the opinion of the Court, in which Presiding Judge Kelly and Judge Eckerstrom concurred.

---

ESPINOSA, Judge:

¶1　　　　In early 2011, Esgardo Nevarez was charged with two counts of aggravated driving under the influence of an intoxicant (DUI).  Prior to trial, he moved to suppress the evidence against him, arguing it was obtained as the result of an unlawful stop.  He also moved to dismiss the charges or suppress evidence on grounds that police officers had interfered with his right to counsel and to gather exculpatory evidence.  Both motions were denied and, following a bench trial at which he stipulated to the facts underlying both charges, Nevarez was convicted and sentenced to concurrent, mitigated prison terms, the longest of which was 2.5 years.  On appeal, he renews his arguments concerning the constitutionality of the stop and ensuing investigation.

**Factual and Procedural Background**

¶2　　　　We view the facts in the light most favorable to sustaining the challenged conviction.  *See, e.g., State v. Sarullo*, 219 Ariz. 431, ¶ 2, 199 P.3d 686, 688 (App. 2008).  In January 2011, around 1:00 a.m., Tucson Police Department Officer K. Wilson pulled over a vehicle driven by Nevarez after being unable to see a license plate on the car.  As Wilson walked up to the vehicle, he saw a temporary registration tag on the back window.  After transmitting the information on the tag over the radio he approached the vehicle's occupants.  While doing so, Wilson observed beer containers in the front and backseat.  When he asked Nevarez for identification, he noticed that Nevarez's speech was "very incoherent" and he appeared to have difficulty understanding the officer's request.  Wilson then performed a records check, which revealed Nevarez's license had been suspended and revoked.

¶3　　　　Nevarez was arrested for DUI and taken to the police station, where a telephonic search warrant to perform a blood draw was obtained.  When advised of the blood draw, Nevarez stated he wanted an attorney to "read [him] the warrant."  An officer told him "it was not going to happen" but said he would be given an opportunity to speak with an attorney later.  Police drew a blood

sample, and subsequent testing revealed a blood alcohol concentration (BAC) greater than .08. After initially invoking his right to an independent blood draw, Nevarez "more or less . . . said 'I'll take care of it later; let's just get this done.'"

¶4        As noted above, Nevarez filed an unsuccessful motion to suppress "any evidence acquired as a result of the illegal seizure" and dismiss the case based on his claim that the investigatory stop of his vehicle was without reasonable suspicion. The trial court also denied a second motion to dismiss or suppress, premised on alleged violations of the right to counsel and right to exculpatory evidence in the form of an independent blood draw. After Nevarez unsuccessfully petitioned this court for special action relief, he moved the trial court to reconsider its ruling on the investigatory stop. That motion was denied, and Nevarez was convicted and sentenced as outlined above. We have jurisdiction over his appeal pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).

**Discussion**

**Investigatory Stop**

¶5        Nevarez first argues the trial court erred in failing to suppress all evidence gathered as a result of the traffic stop, which included the results of the BAC test and Officer Wilson's observations regarding his impairment. He claims the stop was invalid because Wilson "failed to look at the back window of the vehicle for a temporary registration once he saw there was no plate where a plate should be displayed." *See* A.R.S. § 28-2156(D) (temporary registration must be displayed "so that it is clearly visible from outside the vehicle"). Arguing that the officer noticed the registration affixed to the rear window "almost immediately" after stopping his vehicle, Nevarez also challenges the continuation of the investigation after "the reason for the stop had dissipated."

¶6        The state does not dispute that a temporary registration was properly affixed to the rear window of Nevarez's vehicle, but argues Officer Wilson's initial conclusion concerning the absence of a visible license was a "good faith mistake of fact" that supports a

finding of reasonable suspicion. Citing Wilson's testimony that he did not see the temporary registration tag until he approached Nevarez's vehicle on foot, the state contends that continued investigation of the vehicle was authorized because "[a] stop does not end . . . until an officer hands back documentation and/or issues a warning or citation." We review the trial court's ruling on this issue for an abuse of discretion, deferring to factual findings but reviewing *de novo* the ultimate legal question—whether police had a reasonable suspicion of criminal activity. *See State v. Rogers*, 186 Ariz. 508, 510, 924 P.2d 1027, 1029 (1996).

¶7        Under the Fourth Amendment of the United States Constitution, an investigatory stop of a motor vehicle constitutes a seizure. *State v. Gonzalez-Gutierrez*, 187 Ariz. 116, 118, 927 P.2d 776, 778 (1996). However, because a traffic stop is less intrusive than an arrest, it requires only reasonable suspicion on the part of the investigating officer. *Id*. at 118, 121, 927 P.2d at 778, 781. Thus, while an officer needs "'a particularized and objective basis'" for suspecting an individual has violated the law, *id*. at 118, 927 P.2d at 778, *quoting United States v. Cortez,* 449 U.S. 411, 417–18 (1981), he is not required to determine if an actual violation has occurred prior to stopping a vehicle for further investigation, *State v. Vera*, 196 Ariz. 342, ¶ 6, 996 P.2d 1246, 1247-48 (App. 1999).

¶8        Uncontroverted testimony at the suppression hearing established that the temporary registration posted on Nevarez's car was not initially visible to Officer Wilson. As the trial court noted, "it was not until after he had exited his vehicle, walked closer to [Nevarez's] vehicle, and had lights shining towards the rear of the vehicle" that he saw the temporary registration. The court also reviewed photographs of Nevarez's vehicle showing the position and size of the temporary registration. Based on this evidence, we find no error in the court's determination that Wilson had a reasonable basis for suspecting Nevarez had violated the license plate statutes.[1] *See* A.R.S. §§ 28-2156(D), 28-2354.

---

[1]We disagree with Nevarez that *State v. Fikes* compels a different conclusion. 228 Ariz. 389, 267 P.3d 1181 (App. 2011). As

**¶9**        We next consider whether, as Nevarez claims, "[t]he trial court erred in failing to suppress all evidence" based on a finding that "the basis for the stop . . . dissipated" when the arresting officer observed the temporary registration.      An investigatory stop cannot last "'longer than is necessary to effectuate the purpose of the stop.'"  *State v. Sweeney*, 224 Ariz. 107, ¶ 17, 227 P.3d 868, 873 (App. 2010), *quoting Florida v. Royer*, 460 U.S. 491, 500 (1983).   Once the purpose of the stop has been accomplished, the officer must let the driver continue on his way "unless (1) the encounter between the driver and the officer becomes consensual, or (2) during the encounter, the officer develops a reasonable and articulable suspicion that criminal activity is afoot."   *Id.*   In determining whether the scope of an investigatory stop is reasonable, we give "'careful consideration [to] the totality of the circumstances.'"   *State v. Boteo-Flores*, 230 Ariz. 105, ¶ 14, 280 P.3d 1239, 1242 (2012), *quoting Royer*, 460 U.S. at 500.

**¶10**        Officer Wilson testified he did not see Nevarez's temporary registration until he was at a point "[c]lose to the back of [the] trunk."   While still in the vicinity of the trunk, Wilson transmitted the temporary registration number over the radio "[t]o identify the driver of the vehicle and identify that the registration is, in fact, valid."   As the officer approached the car window, he observed "a number of beer . . . bottles or cans scattered throughout the backseat," an "unopened beer in the center console," and "some additional empty beer cans or bottles up front."   Upon speaking with Nevarez, Wilson noticed several physical signs of intoxication, including "red, watery eyes" and "incoherent" speech.   Based on

---

the state points out, that decision involved an officer's mistaken belief that Arizona law required all brake lights on a vehicle to be maintained in working order.  *Id.* ¶¶ 3, 11.  Its holding is therefore distinguishable from cases involving mistakes of fact.  Moreover, in *Fikes*, the state did not argue that a good-faith exception applied, and the court expressly declined to reach that issue.  *Id.* ¶ 16.

this evidence, the trial court determined the brief detention of Nevarez did not violate his rights under the Fourth Amendment.

¶11        Although it appears there are no reported Arizona decisions featuring analogous facts,[2] we find *United States v. Jenkins*, 452 F.3d 207 (2d Cir. 2006), instructive here.  In *Jenkins*, police stopped a car that appeared to lack a rear license plate.  *Id.* at 209.  Upon approaching the car, one of the officers noticed a temporary plate "but did not focus on it because he was concentrating his attention on the occupants of the [vehicle]."  *Id.*  As the officers approached the driver's and passenger's side windows, they detected the odor of marijuana.  *Id.*  They proceeded to investigate the occupants, two of whom eventually were charged with unlawful possession of firearms.  *Id.* at 209-10.  In upholding the search of the vehicle, the court stated, "when police officers stop a vehicle on a reasonable, albeit erroneous, basis and then realize their mistake, they do not violate the Fourth Amendment merely by approaching the vehicle and apprising the vehicle's occupants of the situation." *Id.* at 213; *see also United States v. Edgerton*, 438 F.3d 1043, 1051 (10th Cir. 2006) (acknowledging that brief encounter with driver to advise of erroneous stop could independently give rise to reasonable suspicion of criminal activity).

_____

[2]The trial court's reliance on *State v. Reed*, 927 P.2d 893 (Idaho Ct. App. 1996), which Nevarez also has challenged on appeal, was entirely proper on this basis.  *See State v. Patterson*, 222 Ariz. 574, ¶ 20, 218 P.3d 1031, 1037 (App. 2009) (discussing trial court's inherent ability to evaluate case law from other jurisdictions in absence of controlling Arizona law).  However, because we affirm the court's admission of the challenged evidence on other grounds, we do not express any opinion on *Reed*'s holding that an officer is entitled to ascertain a driver's identity by asking him to produce his driver's license and proof of insurance.  *See State v. Perez*, 141 Ariz. 459, 464, 687 P.2d 1214, 1219 (1984) (appellate court may affirm trial court's ruling if correct for any reason).  Nor do we address the propriety of Officer Wilson's verifying the vehicle's registration by radio.

¶12        Here, as in *Jenkins*, 452 F.3d at 209, Officer Wilson's basis for the stop dissipated when, upon drawing closer to the vehicle's rear window, he observed a temporary registration from a location where he was lawfully entitled to be.  However, the investigation was not concluded, for purposes of the Fourth Amendment, until the occupants of the vehicle had been advised they were free to leave.  *See, e.g., Arizona v. Johnson*, 555 U.S. 323, 333 (2009) (roadside stop normally ends when police inform driver and passengers they are free to go).  It was during that step in the investigation that Wilson observed circumstances that gave rise to a new reasonable suspicion of a separate crime—*i.e.*, the presence of numerous alcohol containers in the car and Nevarez's physical signs of intoxication.  These factors not only permitted, but arguably required Wilson to lawfully proceed with a DUI investigation.  *Cf. State v. Mendoza-Ruiz*, 225 Ariz. 473, ¶ 9, 240 P.3d 1235, 1237 (App. 2010) (reasonableness standard arises from police officer's status as "'jack-of-all-emergencies,' who is 'expected to . . . preserve and protect community safety'"), *quoting United States v. Rodriguez-Morales*, 929 F.2d 780, 784-85 (1st Cir. 1991).  Accordingly, the trial court did not err in finding the stop and ensuing investigation reasonable and in denying Nevarez's motion to suppress.

**Right to Counsel**

¶13        Nevarez also contests the denial of his motion to dismiss based on alleged interference with his right to counsel, challenging the trial court's findings that his request for counsel was either ambiguous or, in the alternative, an attempt to interfere with the police officers' criminal investigation.  Citing the standard enunciated by our supreme court in *Kunzler v. Pima Cnty. Superior Court*, 154 Ariz. 568, 569, 744 P.2d 669, 670 (1987), he argues the state failed to establish that his request for counsel would have hindered the ongoing investigation of his crimes.[3]  The state, in turn, cites

---

        [3]Nevarez also disputes the trial court's statement in its ruling that the remedy for such a violation "would be a suppression, . . . not . . . a dismissal."  However, because we conclude the court did

evidence presented at the hearing and argues the court's findings were legally correct. We defer to the trial court's factual findings but review legal questions *de novo*. *See State v. May*, 210 Ariz. 452, ¶ 4, 112 P.3d 39, 41 (App. 2005).

**¶14** Rule 6.1(a), Ariz. R. Crim. P., recognizes the constitutional right to counsel, and provides that "[a] defendant shall be entitled to be represented by counsel in any criminal proceeding, except . . . where there is no prospect of imprisonment or confinement after a judgment of guilty." "Not every reference to an attorney must be construed by police as an invocation of the suspect's right to counsel," however, and an officer must cease questioning only where the defendant's request for counsel is unambiguous.[4] *State v. Ellison*, 213 Ariz. 116, ¶ 26, 140 P.3d 899, 910 (2006). In other words, the defendant "'must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.'" *State v. Newell*, 212 Ariz. 389, ¶ 25, 132 P.3d 833, 841 (2006), *quoting Davis v. United States*, 512 U.S. 452, 459 (1994). Where an appellant invokes the right to counsel for a particular purpose, such limited invocation may not "operate as a request for counsel for all purposes." *State v. Uraine*, 157 Ariz. 21, 22, 754 P.2d 350, 351 (App. 1988).

**¶15** Nevarez did not request counsel after being placed under arrest and read his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), nor did he ask for an attorney upon arrival at the police station. However, after the arresting officer read the search warrant for the blood draw aloud to him in response to Nevarez's

---

not abuse its discretion in finding that no violation occurred, we need not reach this issue.

[4]Although officers are not required to stop questioning when there is an equivocal request for counsel, it is nevertheless "'good police practice . . . to clarify whether or not [a suspect] wants an attorney.'" *State v. Ellison*, 213 Ariz. 116, n.3, 140 P.3d 899, 910 n.3 (2006).

statement that he was "both illiterate and dyslexic," Nevarez stated, "I want my attorney to read me the warrant." One of the officers told him "he was being provided a copy and he could [have it read to him by counsel] at a later time." Nevarez did not claim to have made any subsequent requests for an attorney, and, as noted, the trial court found his statement constituted an ambiguous request for counsel.

¶16 On this record, we cannot say the trial court abused its discretion in so ruling. Nevarez's request was similar to the one analyzed in *State v. Uraine*, where the defendant had unsuccessfully moved to suppress statements made after he told officers he wanted to see his attorney before taking a breath test. 157 Ariz. at 21, 754 P.2d at 350. We upheld the admission of the evidence, finding that "appellant's limited invocation of the right to counsel did not operate as a request for counsel for all purposes." *Id.* at 22, 754 P.2d at 351, *citing Connecticut v. Barrett*, 479 U.S. 523 (1987) (oral statements improperly suppressed where defendant asked to consult counsel before making written statement); *see also Bruni v. Lewis*, 847 F.2d 561, 564 (9th Cir. 1988) (finding partial waiver where defendant stated he would not answer questions "without my attorney" but would "answer those I see fit"); *Stumes v. Solem*, 752 F.2d 317, 320-21 (8th Cir. 1985) (no general invocation of right to counsel where defendant refused to agree to polygraph test without talking to counsel).

¶17 Here, Nevarez's request for assistance was expressly confined to a reading of the warrant. *Cf. State v. Keyonnie*, 181 Ariz. 485, 485-87, 892 P.2d 205, 205-07 (App. 1995) (right to counsel violated where defendant stated, "Lawyer present today, right now"); *Kunzler*, 154 Ariz. at 569, 744 P.2d at 670 (where defendant initially requested that he be allowed to call an attorney, violation to deny consultation if no interference with ongoing investigation). After officers explained that Nevarez would be provided a copy of the warrant that his attorney could read to him at another time, he made no further requests for attorney assistance.

¶18 The trial court was not required to "disregard . . . the ordinary meaning" of Nevarez's statement in order to conclude he

had "invoked his right to counsel for all purposes." *Barrett*, 479 U.S. at 529-30. And any violation of his claimed right to have a search warrant read aloud by counsel—a right for which he cites no authority—would not warrant suppression here because Nevarez has never disputed the validity of the warrant and therefore cannot demonstrate the requisite nexus between the violation of the right and the evidence obtained. *See State v. Rumsey*, 225 Ariz. 374, ¶ 16, 238 P.3d 642, 647-48 (App. 2010) (violation of right to counsel does not automatically warrant suppression in DUI case). Accordingly, we find no error in the denial of Nevarez's motion to dismiss or suppress based on a violation of his right to counsel.[5]

**Interference with Right to Exculpatory Evidence**

**¶19**      In a related claim, Nevarez contends the trial court erred in denying his motion to dismiss or suppress based on a claim that police interfered with his right to gather exculpatory evidence in the form of an independent blood draw. He relies on a blood draw report, introduced at the suppression hearing, that states, "Yes[,] please" in the area of the form where responses to the independent test notification are recorded. Nevarez also challenges the reliability of testimony concerning his subsequent withdrawal of that request, citing a decision in which the supreme court discussed the prudence of tape-recorded interrogations. *See State v. Jones*, 203 Ariz. 1, ¶ 18, 49 P.3d 273, 279 (2002). The state argues the court's finding was correct because the evidence that Nevarez withdrew his

---

[5]Although we need not reach the issue of whether Nevarez's conduct unduly delayed the DUI investigation, *see State v. Penney*, 229 Ariz. 32, ¶ 13, 270 P.3d 859, 862 (App. 2012), we observe that the trial court's finding that Nevarez was "engaging in activity in order to disrupt the collection of evidence," does not appear to be determinative on this point, *see id.* (state must prove that "allowing the suspect to confer with counsel when requested would have impeded the investigation"); *see also Rumsey*, 225 Ariz. 374, ¶ 11, 238 P.3d at 646 (finding of impediment involves showing of "exigent circumstances" necessitating immediate blood draw).

request for an independent blood draw was undisputed. As with the other claims raised by Nevarez on appeal, we defer to factual findings but review *de novo* any legal determinations. *See State v. May*, 210 Ariz. 452, ¶ 4, 112 P.3d 39, 41 (App. 2005).

**¶20** As the state acknowledges, a DUI suspect has a due process right to gather independent evidence of sobriety while it still exists. *See State v. Rosengren*, 199 Ariz. 112, ¶ 12, 14 P.3d 303, 308 (App. 2000); *see also McNutt v. Superior Court*, 133 Ariz. 7, n.2, 648 P.2d 122, 125 n.2 (1982). Accordingly, the state "may not unreasonably interfere with an accused's reasonable attempts to secure, at his own expense, a blood or other scientific test for the purpose of attempting to establish evidence of his sobriety at or near the crucial time under consideration." *Smith v. Cada*, 114 Ariz. 510, 514, 562 P.2d 390, 394 (App. 1977). The arrangement of such a test is the defendant's responsibility, however, and any difficulties he encounters in attempting to obtain a blood test must have been created by the state in order to find unreasonable interference. *Van Herreweghe v. Burke*, 201 Ariz. 387, ¶ 10, 36 P.3d 65, 68 (App. 2001).

**¶21** The evidence at the suppression hearing established that Nevarez initially requested an independent blood draw when he was informed of his rights. But he subsequently declined, telling the arresting officer that he would "take care of it later." Nevarez did not offer any testimony at the hearing, and on the basis of this "uncontroverted" evidence that he had "change[d] his mind," the trial court found the right had been waived.

**¶22** Contrary to Nevarez's argument on appeal, that he initially invoked his right to an independent blood draw does not undermine the evidence that he ultimately waived that right. Although the blood draw report itself documents only his initial invocation, both the arresting officer and the officer who performed the blood draw testified they had recorded Nevarez's subsequent waiver in their narrative reports of the incident. The trial court was in the best position to evaluate these witnesses' credibility, and we see no reason to disturb its determination. *See, e.g., State v. Olquin*, 216 Ariz. 250, ¶ 10, 165 P.3d 228, 230 (App. 2007).

**¶23**      Nevarez also contends the arresting officer interfered with his right to an independent draw by failing to inform him "he would be booked into jail and held past the time that obtaining an independent draw would be meaningful."   But this argument mischaracterizes the law on unreasonable interference.   In *Van Herreweghe,* we rejected a similar claim on grounds that a defendant's "lack of knowledge is not a barrier erected by the State in the defendant's path to independent testing."   201 Ariz. 387, ¶ 10, 36 P.3d at 68.

**¶24**      Nevarez's claim that the state's evidence of waiver should have been rejected because "waivers that are not taped are inherently suspicious," is similarly unavailing.   Although our supreme court stated in *Jones* that a recording of the entire interrogation process "provides the best evidence available" of voluntary waiver, it also upheld the trial court's discretionary decision to admit statements based on a defendant's unrecorded waiver.   203 Ariz. 1, ¶¶ 18-19, 49 P.3d at 279.   While we acknowledge the preference for recorded interrogations, the supreme court's comments on best practices cannot be interpreted to preclude the admission of unrecorded waivers.   Accordingly, we find no error in the denial of Nevarez's motion.

## Criminal Restitution Order

**¶25**      Finally, we address an issue that was neither raised below nor briefed on appeal.  Specifically, at the time of sentencing, the trial court entered an order imposing multiple fees and assessments and reducing "all fines, fees, assessments and/or restitution" to a criminal restitution order (CRO).  The imposition of such an order prior to the expiration of Nevarez's sentence "'constitutes an illegal sentence, which is necessarily fundamental, reversible error.'"  *State v. Lopez*, 231 Ariz. 561, ¶ 2, 298 P.3d 909, 910 (App. 2013), *quoting State v. Lewandowski*, 220 Ariz. 531, ¶ 15, 207 P.3d 784, 789 (App. 2009).[6]  Accordingly, the CRO cannot stand.

---

[6]Section 13-805, A.R.S., has since been amended to permit the entry of CROs for the unpaid balance of any court-ordered

## Disposition

**¶26** For the foregoing reasons, we affirm Nevarez's convictions and sentences for aggravated DUI but vacate the portion of the trial court's order containing an unauthorized CRO.

---

restitution. *See* 2012 Ariz. Sess. Laws, ch. 269, § 1; *State v. Cota*, 234 Ariz. 180, ¶ 1, 319 P.3d 242, 243 (App. 2014).