NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellant*,

*v.*

SIMONE KEARNS, *Appellee*.

No. 1 CA-CR 16-0321
FILED 4-13-2017

Appeal from the Superior Court in Maricopa County
No. CR2014-115861-001
The Honorable Jose S. Padilla, Judge

**REVERSED AND REMANDED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Amanda M. Parker
*Counsel for Appellant*

Maricopa County Public Defender's Office, Phoenix
By Terry Reid
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Peter B. Swann delivered the decision of the court, in which Judge Kent E. Cattani and Judge Donn Kessler joined.

---

**S W A N N**, Judge:

¶1          The State appeals from the superior court's order granting Simone Kearns's motion to suppress evidence seized from her vehicle during a traffic stop.  For the reasons that follow, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

¶2          Two police officers in the same patrol car were patrolling near a Phoenix residence known to have been previously involved with drug activity.  The officers watched Kearns exit the residence, get into a pickup truck that was parked in front, and drive away.

¶3          As the officers followed her in their patrol car, neither could read the truck's full license plate, only the letters and numbers toward the plate's edges.  Officer Yoder, who was driving the patrol car, testified that the license plate was "covered up by a trailer — a tow hitch and also by some wire that was hanging down."  Officer Louisoder also testified that the hitch and hanging wires blocked the middle portion of the plate.

¶4          The officers pulled Kearns over for failing to maintain a legible license plate.  When Kearns stopped her truck, the officers parked their patrol car behind it.  Both officers testified that they could not read the truck's license plate until they exited their vehicle and walked toward the truck.  Officer Yoder testified that he could not read the license plate until he was standing approximately 10 to 15 feet away from it; Officer Louisoder testified that he could read the license plate when he "walked up to the vehicle and stood close by it."

¶5          When Kearns could not produce her driver's license or any other form of identification, Officer Yoder placed her under arrest.  Officer Yoder handcuffed Kearns, and placed her in the back of the patrol car.  Both officers testified their standard practice, when a person is unable to provide identification, is to take the person into custody.

¶6          While in the patrol car, Kearns told Officer Louisoder that her identification might be in her truck's glove compartment. Officer Louisoder asked for permission to search the glove compartment; Kearns granted permission. Officer Louisoder searched the glove compartment while Officer Yoder remained with Kearns in the patrol car. When Officer Louisoder could not find Kearns's identification in the glove compartment, he searched her purse, which was sitting on the driver's seat. Officer Louisoder did not find Kearns's identification inside her purse, but he found a baggie of methamphetamine, which was not in plain view.

¶7          Officer Louisoder testified that the Phoenix Police Department's inventory policy required him to search and inventory the entire pickup truck, including any containers, before booking Kearns into jail. The officers could have started an inventory search immediately after searching the glove compartment, but admitted that he had not started the inventory search when he searched her purse. Later, after conducting a full inventory search of the pickup truck, Officer Louisoder was still unable to locate Kearns's identification.

¶8          Following the inventory search, Kearns was transported to the police station, booked into jail and released soon thereafter. Kearns was cited for possessing dangerous drugs, failing to provide identification, and failing to maintain a legible license plate. Kearns was later charged with possession of a dangerous drug, a class 4 felony.

¶9          Kearns filed a motion to suppress the methamphetamine under the Fourth Amendment of the United States Constitution and Article 2, Section 8 of the Arizona Constitution.

¶10          At the April 22, 2016, evidentiary hearing on that motion, Kearns did not dispute the officers' testimony that a tow hitch and wiring obstructed their view of her license plate, and admitted that she was found responsible in city court for the license-plate violation. She agreed with Officer Louisoder's testimony that she had given him consent to search the glove compartment, but not her purse.

¶11          In granting Kearns's motion to suppress, the court stated, in relevant part:

> [The officers] believed that bumper hitch obstructed the plate. The Court disagrees with that simply because Officer Yoder indicated that within 10 or 15 feet, which is approximately the distance between two vehicles, when they

parked, he noticed that he could see the entire plate plain and simple. . . .

. . . .

[T]here is no reasonable basis for the stop. And there is something just wrong with saying, [w]ell, this is a basis for a stop, when the officers, essentially, are closing their eyes. If I close my eyes to the fact that there is a license plate there, I don't see it. As far as I'm concerned, subjectively I obstruct it. So if you put yourself in a position where you can't see it because it's in front of the car, it's obstructed. You can't see it. But if it's open to the public and readable from the public view, it is open to the public. Ten to 15 feet, the officer admitted, he saw the plate. It was highly legible.

This part about the wires obstructing it, I'm not buying that at all. So I find the credibility is lacking as to that.

As to the bumper hitch, yes, it might have obstructed it, but if you just move your head to the side or the other one or one officer or the other, they would have been able to see it. So, again, I find that the officers placed themselves in the position where they created the offense. There is federal case law on that issue. You cannot create an exigent circumstance. The same thing applies to the making of a crime.

The court ruled that because the officers lacked reasonable suspicion to stop Kearns's truck, the resulting search and discovery of the methamphetamine were improper.

¶12        The State moved to dismiss the case without prejudice and filed a notice of appeal from the court's ruling.

**DISCUSSION**

¶13        The State contends that the court erred by finding that the officers could read Kearns's license plate "when they parked;" that the court erred by concluding that the officers did not have reasonable suspicion that Kearns violated A.R.S. § 28-2354(B)(3), which requires that a license plate be displayed "so it is clearly legible;" and that the methamphetamine in Kearns's purse inevitably would have been discovered as part of the inventory search.

4

**¶14**     We conclude that the court erred in granting the motion to suppress. Because the court granted the motion based on the validity of the stop, and did not address any other issue, we address only the validity of the stop.

**¶15**     We review the grant or denial of a motion to suppress evidence for abuse of discretion. *State v. Carter*, 145 Ariz. 101, 110 (1985). We must view the evidence in the light most favorable to upholding the court's ruling, *State v. Sheko*, 146 Ariz. 140, 141 (App. 1985), deferring to the court's factual determinations, including its evaluation of the credibility of witness testimony, *State v. Estrada*, 209 Ariz. 287, 292, ¶ 22 (App. 2004); *State v. Box*, 205 Ariz. 492, 495, ¶ 7 (App. 2003) ("In reviewing the denial of a motion to suppress evidence, we defer to the trial court's factual determinations, but the ultimate ruling is a conclusion of law we review de novo."). The court's findings of fact, however, must be supported by the record and cannot be clearly erroneous. *Estrada*, 209 Ariz. at 288, ¶ 2. An abuse of discretion exists when the record is "devoid of competent evidence to support" the decision, *Fought v. Fought*, 94 Ariz. 187, 188 (1963), or when the trial court makes an error of law in the process of making its decision, *State v. Simon*, 229 Ariz. 60, 62, ¶ 7 (App. 2012); *State v. Noceo*, 223 Ariz. 222, 224, ¶ 3 (App. 2009).

**¶16**     As the court held, the stop required a reasonable basis, that is, a particularized and objective basis, to suspect Kearns had violated the law. *State v. Nevarez*, 235 Ariz. 129, 133, ¶ 7 (App. 2014). We review de novo whether the officers had reasonable suspicion, based on the totality of the circumstances, to perform an investigatory stop of Kearns's truck. *Id.* at 132, ¶ 6; *State v. Vera*, 196 Ariz. 342, 343, ¶ 4 (App. 1999).

**¶17**     Based on this record, the officers had reasonable suspicion to stop Kearns's truck. A.R.S. § 28-2354(B)(3) requires that a license plate be displayed "so it is clearly legible." Even giving appropriate deference to the court's findings of fact and assessment of witness credibility, we must conclude that the court's ruling was based on a mistaken perception of the testimony and a flawed application of that statute.

**¶18**     The court concluded that "Officer Yoder indicated that within 10 or 15 feet, which is approximately the distance between two vehicles, when they parked, he noticed that he could see the entire plate plain and simple." The State correctly argues this equates to a finding that Officer Yoder could read Kearns's license plate while they were in the patrol car. Yet such a finding is contrary to the only evidence presented on the question: both officers testified that they could not read the license

plate until they parked, exited their patrol car, and walked toward the truck.

**¶19** In addition, the court's conclusion that the bumper hitch "might have obstructed" the license plate but that the officers could have "just move[d their] head[s] to the side" to see it results in an illogical application of A.R.S. § 28-2354(B)(3). We must "interpret and apply statutory language in a way that will avoid an untenable or irrational result," *State v. Estrada*, 201 Ariz. 247, 251 ¶ 16 (2001), and we must also "apply practical, common sense constructions rather than hypertechnical ones that would tend to frustrate legislative intent when we interpret criminal statutes," *State v. Seyrafi*, 201 Ariz. 147, 151, ¶ 11 (App. 2001). We give words their commonly accepted meanings, unless a statutory term is defined, in which case we apply that meaning. *State v. Bon*, 236 Ariz. 249, 251, ¶ 6 (App. 2014). Here, the statute requires that a license plate be "clearly legible," not that it be potentially legible from only one particular angle or from only a particular distance. License plates "need to be easily read . . . to facilitate law enforcement and ordinary citizens in reporting and investigating hit-and-run accidents, traffic violations, gas-pump drive offs, and other criminal activity." *Parks v. State*, 247 P.3d 857, 860, ¶ 12 (Wyo. 2011) (finding that trailer hitch ball that partially obstructed license plate violated statute requiring that plate be "plainly visible" and "clearly legible").

### CONCLUSION

**¶20** For the foregoing reasons, we conclude the court erred by granting Kearns's motion to suppress the methamphetamine because the officers lacked reasonable suspicion for the traffic stop. We vacate the suppression order and remand for proceedings consistent with this decision.

