IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

THE STATE OF ARIZONA,
*Appellee*,

*v.*

JESUS RAMIRO MORENO,
*Appellant*.

No. 2 CA-CR 2013-0339
Filed December 30, 2014

Appeal from the Superior Court in Cochise County
No. CR2012200176
The Honorable James L. Conlogue, Judge

**AFFIRMED**

COUNSEL

Thomas C. Horne, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Amy Pignatella Cain, Assistant Attorney General, Tucson
*Counsel for Appellee*

Law Offices of Christopher L. Scileppi, P.L.L.C.
By Christopher L. Scileppi, Tucson
*Counsel for Appellant*

## OPINION

Judge Espinosa authored the opinion of the Court, in which Presiding Judge Miller and Chief Judge Eckerstrom concurred.

E S P I N O S A, Judge:

**¶1**        After a vehicle was stopped for a window tint violation and a load of marijuana discovered within, a jury convicted Jesus Moreno of conspiracy to commit transportation of marijuana for sale, transportation of marijuana for sale, possession of marijuana for sale, possession of drug paraphernalia, and misconduct involving weapons.  The trial court dismissed the charge of possession of marijuana as a lesser-included offense and imposed concurrent, presumptive prison terms totaling 7.5 years on all remaining charges.  On appeal, Moreno contends the court erred in denying his motion to suppress evidence, challenging the basis for the traffic stop leading to his arrest.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

**¶2**        In reviewing a trial court's denial of a motion to suppress, we view the facts in the light most favorable to upholding its ruling, considering only the evidence presented at the suppression hearing.  *State v. Teagle*, 217 Ariz. 17, ¶ 2, 170 P.3d 266, 269 (App. 2007).  On March 7, 2012, Detective Paul Barco of the Douglas Police Department was in an unmarked truck on State Route 80 near Douglas when he saw two vehicles that appeared to be traveling in tandem.  He observed a white Chrysler Concord, following "[n]ot even three seconds" behind a black Nissan SUV.[1]  This "caught [his] attention" because the traffic on State Route 80 in that area is normally "really light" and he "hardly saw any traffic"

---

[1]The detective acknowledged a three second distance was legal at the rate of speed the Concord and the Nissan were traveling.

while he was on duty that day. The detective followed the vehicles for several miles and observed behavior he found suspicious. The Nissan appeared to gain speed while the Concord slowed down, as if "they were separating from each other," consistent with a heat vehicle "lead[ing] p[ro]spective law enforcement off the trial of [a] load vehicle."

¶3 The detective "lost sight of the black Nissan," but eventually observed it parked on the side of the road with its hood up as he passed the Concord. He continued eastbound until he stopped to speak with a United States Border Patrol agent to advise him of the vehicles traveling in tandem. During that time, the Concord passed the detective's location and he "noticed that [its window] tint appeared to be illegal." The detective drove back onto the highway and "pulled up really close" to the Concord and noticed "an object hanging from the rearview mirror" that he believed "obstruct[ed] the driver's view," but he could not identify it.[2] He then stopped the Concord, and a search ultimately revealed 172 pounds of marijuana. The driver and the passenger, Moreno, were arrested, and the Concord was taken to the Douglas Police Department, where a tint meter reading revealed the front window tint actually was within legal limits.

¶4 Before trial, Moreno filed a motion to suppress evidence, arguing the detective "had no reasonable suspicion to effectuate the traffic stop." Specifically, Moreno contended he was only stopped "for being in a vehicle that had a perfectly legal window tint and for having a rosary that was hanging from the rear view mirror," and neither constituted a traffic violation. The state responded that the detective had considered several factors which, when taken together, were a sufficient basis for reasonable suspicion of criminal activity, including the in-tandem driving and the detective's experience in the area, and that his good-faith mistake of fact regarding the tint did not otherwise invalidate the stop.

---

[2]The detective later learned the object was a rosary, measuring approximately a foot in length, which hung "down below the top of the dash."

Following a hearing, the trial court denied the motion, and Moreno was found guilty at trial on all counts.

## DISCUSSION

**¶5** When reviewing a ruling on a suppression motion, "'we defer to the trial court's factual findings, including findings on credibility and the reasonableness of the inferences drawn by the officer.'" *State v. Moran*, 232 Ariz. 528, ¶ 5, 307 P.3d 95, 98 (App. 2013), *quoting Teagle*, 217 Ariz. 17, ¶ 19, 170 P.3d at 271. We review mixed questions of fact and law de novo, considering whether the totality of the circumstances gave rise to reasonable suspicion to support an investigative detention. *State v. Sweeney*, 224 Ariz. 107, ¶ 12, 227 P.3d 868, 872 (App. 2010). We will uphold the court's ruling if legally correct for any reason supported by the record. *State v. Childress*, 222 Ariz. 334, ¶ 9, 214 P.3d 422, 426 (App. 2009).

**¶6** At the conclusion of the suppression hearing, the trial court found the detective's mistake regarding the window tint to be one of fact, and concluded that his "actions were reasonable and in good faith, and the objective facts established reasonable suspicion for an actual violation of the law." When Moreno sought clarification as to whether the court was denying his motion solely on the basis of the tint, the court stated:

> No. Now, the other factors there are certainly not as strong as the window tint. I am hanging my hat on the window tint, but certainly all those other factors were something that the Officer had in mind, but the ruling is based on the window tint.

**Mistaken Belief as to Window Tint**

**¶7** Moreno contends the trial court erred in classifying the detective's incorrect belief that the window tint was illegal as a mistake of fact, which has been held a sufficient basis for founded suspicion if the mistake was made in good faith and reasonable. *See, e.g., Illinois v. Rodriguez*, 497 U.S. 177, 183-86 (1990) ("what is generally demanded of the many factual determinations that must

regularly be made by agents of the government . . . is not that they always be correct, but that they always be reasonable"). Moreno argues the detective made a mistake of law and, therefore, it could not constitute a valid basis for the stop, citing federal cases from the Ninth Circuit Court of Appeals for that proposition.[3] We note, however, that the federal circuit courts have been split on the issue. *Compare United States v. Chanthasouxat*, 342 F.3d 1271, 1277 (11th Cir. 2003) (officer's mistake of law cannot provide objective grounds for reasonable suspicion), *and United States v. McDonald*, 453 F.3d 958, 961-62 (7th Cir. 2006) (same), *with United States v. Delfin-Colina*, 464 F.3d 392, 399-400 (3rd Cir. 2006) (traffic stops based on mistake of law valid if mistake is objectively reasonable), *and United States v. Smart*, 393 F.3d 767, 770 (8th Cir. 2005) ("in mistake cases the question is simply whether the mistake, whether of law or of fact, was an objectively reasonable one").

¶8        During the suppression hearing, the detective testified that his understanding of Arizona law with respect to legality of window tint was that "[i]t's 33 [percent] plus or minus three percent . . . [m]eaning it can be 36 percent, or it could be 30 percent . . . [o]f the transmission of light going through the window." This is an accurate recitation of Arizona's window tint statute.[4] The tint meter reading ultimately established that the Concord's front windows had a light transmission of thirty-six percent, legal under Arizona law.

_____

[3]*United States v. Twilley*, 222 F.3d 1092, 1096 (9th Cir. 2000) ("[A] belief based on a mistaken understanding of the law cannot constitute the reasonable suspicion required for a constitutional traffic stop."); *United States v. Lopez-Soto*, 205 F.3d 1101, 1106 (9th Cir. 2000) (officer violated Fourth Amendment by stopping vehicle based on mistaken view of the law).

[4]Under A.R.S. § 28-959.01(A)(1), window tint on the front-side windows is permitted so long as "[f]ront side wing vents and windows . . . have a substance or material in conjunction with glazing material that has a light transmission of thirty-three per cent plus or minus three per cent and a luminous reflectance of thirty-five per cent plus or minus three per cent."

¶9        Moreno acknowledges the detective accurately related the law; however, he contends that by initially determining the Concord's window tint allowed for transmission of less than the permitted amount of light, the detective "erroneously conclud[ed] the legal effects of believed facts." In other words, because the detective observed legal tint, but perceived it to be illegal, he misapprehended the law. We find this argument unpersuasive and illogical. Under this reasoning, a stop based on a tint violation where the tint later proved to be within legal limits would always constitute a mistake of law. The detective's mistake, however, was not a result of misapplication or misunderstanding of the law. Instead, he incorrectly estimated the opacity of the tint on the Concord's windows; had the opacity been as the detective believed, it would have violated A.R.S. § 28-959.01(A)(1). Thus, the trial court correctly found that the detective made a mistake of fact regarding the window tint.[5]

¶10        The distinction between a mistake of law and one of fact, however, may now have lost much of its significance. Arizona's courts have not directly addressed the issue in the context of founded suspicion for a traffic stop, but the United States Supreme Court recently has done so. In *Heien v. North Carolina*, No. 13-604, 2014 WL 7010684 (2014), the Court resolved the split in the federal circuits by holding that reasonable suspicion can rest on a reasonable mistake of law. In so holding, the Court reasoned that "mistakes [of law] are no less compatible with the concept of reasonable suspicion," with the critical inquiry being whether the mistake—either of fact or of law—was an objectively reasonable one. *Id.* at 5, 8.

¶11        We therefore need only consider whether the detective's mistaken belief that the Concord's window had illegal tint was reasonable. *See id.* at 8 (Fourth Amendment tolerates only objectively reasonable mistakes); *cf. State v. Livingston*, 206 Ariz. 145,

---

[5]The detective would have made a mistake of law, for example, had he accurately estimated that a window allowed for forty percent light transmission, but incorrectly believed it violated § 28-959.01(A)(1).

¶ 9, 75 P.3d 1103, 1105 (App. 2003) ("traffic stops based on facts that neither constitute a violation of the law nor constitute reasonable grounds to suspect the driver has committed an offense . . . run afoul of the Fourth Amendment"). If the facts, as believed by the detective, gave rise to reasonable suspicion that the Concord's tint was illegal, the traffic stop may be upheld on that basis alone. *See United States v. Mariscal*, 285 F.3d 1127, 1130 (9th Cir. 2002) (Fourth Amendment requires only reasonable suspicion in context of traffic stops); *cf. Chanthasouxat*, 342 F.3d at 1277 (propriety of traffic stop depends not on whether defendant actually committed traffic offense, but whether it was reasonable for officer to believe an offense had been committed), *citing United States v. Cashman*, 216 F.3d 582, 587 (7th Cir. 2000).

¶12 We assess the totality of the circumstances from the perspective of "an objectively reasonable police officer" in evaluating the validity of the stop. *Ornelas v. United States*, 517 U.S. 690, 696 (1996). And that assessment requires us to consider both "objective factors" and "surrounding circumstances," "taking into account the officer's relevant experience, training, and knowledge." *State v. Fornof*, 218 Ariz. 74, ¶ 6, 179 P.3d 954, 956 (App. 2008).

¶13 Moreno argues the detective lacked a particularized and objective basis to support his suspicion that the window tint was illegal. At the hearing, Moreno analogized a stop based on a window tint violation to one based on speeding to clarify his view of "objective basis":

> Q. Let me clarify what I mean by objective basis. You don't pull somebody over, for example, for speeding and cite them and give them a ticket, unless you either pace them, you gun them with radar, or gun them with a laser, correct?
>
> A. Correct.
>
> Q. And those, pacing, the laser or the radar, are objective bases for which to stop somebody under the law, correct?

A.   Yes.

. . . .

Q.   [The legislature has set up parameters] so you don't have a basis just to pull anybody [o]ver because you think that they are speeding, you have to have some objective basis, correct?

A.   Well, not necessarily.  If I am stopped on an intersection and I see a car coming up, and I know that the speed limit is 25, I can estimate that the car is traveling 35 or more, or 45 or more, I still, I believe, have the right to pull over the car.

Q.   That's a good point.  .  .  . [A]ssume for the sake of this hypothetical, that a car is going down the road and [the] speed limit is 25 miles per hour, okay?

A.   Okay.

Q.   And the car is going 26 miles per hour, or 27 miles per hour, you are not going to pull that car over because you cannot sit here and tell this Court that you can make a determination that the car is going one to two miles above the speed limit, correct?

A.   Correct.

Q.   Similarly in this situation, it turned out—you didn't have any objective basis to determine that that tint was illegal, correct?

A.   Just on my observation.

8

In applying this rationale to his case, Moreno contends that, in order for a stop based on a tint violation to be reasonable, an officer must allow "leeway to ensure his conclusions are correct." He also maintains that the reasonable and prudent man only "springs to action" when "something is so clearly excessive . . . so as to be undeniably . . . true." Moreno, however, cites no authority for either proposition and we are aware of none.[6]

¶14 Moreno is correct that an officer must have an objective and particularized basis for conducting a traffic stop based on a suspected window tint violation. *See Livingston*, 206 Ariz. 145, ¶ 9, 75 P.3d at 1106. We disagree, however, with his characterization of "objective basis" as requiring some measurable proof of a violation before conducting a traffic stop.

¶15 Subjectivity may often factor into establishing reasonable suspicion that a window is too dark under § 28-959.01(A)(1). Unlike a speeding violation, which can be objectively estimated by radar gun or pacing before making a traffic stop, Detective Barco's testimony and the exhibits introduced at the hearing suggested a window tint violation cannot be confirmed until a vehicle is stopped and a tint meter is deployed. *See State v. Williams*, 934 A.2d 38, 47 (Md. 2007) (objective measurement of tint, under current technology, may be unfeasible prior to stop). An officer's visual observation of a vehicle's glass may be the only feasible way to establish reasonable suspicion to stop a moving vehicle for a suspected window tint violation. And the reasonableness of the officer's observation will often depend upon his training and experience in enforcing window tint violations. *See State v. Gonzalez-Gutierrez*, 187 Ariz. 116, 119, 927 P.2d 776, 779 (1996) (totality of circumstances analysis includes "evaluat[ing] subjective

---

[6]To the contrary, Fourth Amendment jurisprudence allows officer leeway in the other direction. *See Heien*, No. 13-604, 2014 WL 701068474, 5 ("To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'"), *quoting Brinegar v. United States*, 338 U.S. 160, 176 (1949).

elements, such as the agent's training and experience"). Thus, that the window cannot be objectively measured before stopping the vehicle does not mean the stop cannot be objectively reasonable. *See State v. Nevarez*, 235 Ariz. 129, ¶ 7, 329 P.3d 233, 237 (App. 2014) (officer need not determine if actual traffic violation occurred before stopping vehicle for further investigation); *see also State v. Conaway*, 779 N.W.2d 182, 184 (Wis. Ct. App. 2009) (officer need not ascertain window tint violation with certainty to establish reasonable suspicion). The law does not require an officer to leave himself "leeway" to ensure the conclusions he reached based on "subjective facts" are correct. *See Nevarez*, 235 Ariz. 129, ¶ 7, 329 P.3d at 237. Indeed, were that the case, it would effectively impose a standard of "beyond a reasonable doubt" for determining whether a violation actually occurred. An officer is not required to make such a showing to justify a stop. *Cf. Livingston*, 206 Ariz. 145, ¶ 9, 75 P.3d at 147.

¶16        Nor do we agree with Moreno that the "particularized" requirement was not met because the detective failed to "mention or describe in detail" the factors that caused him to suspect the window tint was illegal. A suspicion must "be particularized such that it does more than simply describe large numbers of others who are also driving on the highways in that vicinity and at that time." *Gonzalez-Gutierrez*, 187 Ariz. at 120, 927 P.2d at 780. But reasonable suspicion does not require police to rule out every possibility of innocent conduct. *State v. Ramsey*, 223 Ariz. 480, ¶ 23, 224 P.3d 977, 982 (App. 2010).

¶17        Here, the detective had a reasonable and good-faith suspicion that the Concord's front-side windows were in violation of § 28-959.01(A)(1). He observed the window tint on a "sunny" day, and determined that it "appeared to be illegal" because it was "too dark." He also had accurate knowledge of Arizona's law on window tint, and testified that over the course of his career he had stopped "several hundreds" of vehicles based on suspected tint violations, and had been correct "99 percent" of the time. He explained he was able to estimate his accuracy because he "always test[s] the window with [a] tint meter" after making a traffic stop based on a tint violation. Notably, the Concord window was near

the darkest legal limit, and the detective was only off in his visual assessment by a few degrees of light transmission.

¶18          When all the above factors are considered together, particularly in light of the detective's substantial experience with tint violations, we cannot say the trial court erred in finding the detective had a good-faith, reasonable basis for suspecting the Concord's window tint was illegal.[7] *See King*, 244 F.3d at 738-39; *cf. State v. Olquin*, 216 Ariz. 250, ¶ 10, 165 P.3d 228, 230 (App. 2007) (trial court in best position to assess witness credibility). And because the suspected traffic violation was sufficient to provide reasonable suspicion to stop the vehicle in which Moreno was a passenger, *see State v. Acosta*, 166 Ariz. 254, 257, 801 P.2d 489, 492 (App. 1990), we need not determine whether other factors relied upon by Detective Barco and considered by the trial court also supported reasonable suspicion. Accordingly, we find no error in the court's denial of the motion to suppress the evidence obtained as a result of the stop.

## Disposition

¶19          For the foregoing reasons, Moreno's convictions and sentences are affirmed.

---

[7]In upholding the trial court's ruling, we do not suggest an officer's mistaken perception of a tint violation may be excused upon merely describing the tint as "appear[ing] to be illegal," or "too dark" where it later proves to be within legal tolerance. The determination turns on the specific facts and totality of circumstances involved, *see Fornof*, 218 Ariz. 74, ¶ 6, 179 P.3d at 956 (reasonable suspicion inquiry is fact specific), and the trial court's assessment of the basis for and credibility of such testimony, *see State v. Hoskins*, 199 Ariz. 127, ¶ 97, 14 P.3d 997, 1019 (2000) (trial court in best position to evaluate witness credibility and weigh evidence).