IN THE
**ARIZONA COURT OF APPEALS**
DIVISION TWO

_____

THE STATE OF ARIZONA,
*Appellee*,

*v.*

THOMAS L. DEAN,
*Appellant*.

No. 2 CA-CR 2015-0392
Filed January 12, 2017

_____

Appeal from the Superior Court in Cochise County
No. CR201300593
The Honorable Wallace R. Hoggatt, Judge

**REVERSED**

_____

COUNSEL

Mark Brnovich, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Amy Pignatella Cain, Assistant Attorney General, Tucson
*Counsel for Appellee*

Emily Danies, Tucson
*Counsel for Appellant*

**OPINION**

Chief Judge Eckerstrom authored the opinion of the Court, in which Presiding Judge Vásquez concurred and Judge Metcalf[1] dissented.

E C K E R S T R O M, Chief Judge:

**¶1**       Thomas Dean appeals from his conviction and sentence for sexual exploitation of a minor.  On appeal, he challenges the trial court's ruling that, although the pertinent warrant was defective, the officer relied on it in good faith.  For the following reasons, we conclude that the warrant in question was facially invalid and in clear violation of the constitutional requirement of particularity.  We therefore reverse the court's ruling and Dean's conviction and sentence.

**Factual and Procedural Background**

**¶2**       "In reviewing the denial of a defendant's motion to suppress, we consider only 'evidence presented at the suppression hearing and view the facts in the light most favorable to sustaining the trial court's ruling.'"  *Brown v. McClennen*, 239 Ariz. 521, ¶ 4, 373 P.3d 538, 540 (2016), *quoting State v. Hausner*, 230 Ariz. 60, ¶ 23, 280 P.3d 604, 614 (2012).  In July 2012, a detective with the Cochise County Sheriff's Office received a report that Dean had sexually assaulted eight-year-old C.D. eighteen months earlier.  The detective sought a search warrant for Dean's trailer and car.  In the affidavit, as the sole basis for probable cause, the detective described an incident occurring in December 2010, in which Dean had "put his

---

[1]The Hon. D. Douglas Metcalf, a judge of the Pima County Superior Court, is authorized and assigned to sit as a judge on the Court of Appeals, Division Two, pursuant to Arizona Supreme Court order filed September 21, 2016.

thing up [C.D.'s] thing."[2]  At the time he sought the warrant, the detective knew, but did not advise the magistrate, that Dean had previously been convicted of child molestation sixteen years earlier in another state.  In that prior incident, Dean had photographed the victim.[3]

¶3        During the search of Dean's trailer, officers seized a laptop computer and submitted it for examination.  The computer contained images of child pornography that resulted in a ten-count indictment, which was reduced to a single count at the state's request.[4]  After a bench trial, Dean was convicted of one count of sexual exploitation of a minor under fifteen years of age and sentenced to an enhanced, minimum prison term of twenty-one years.  This appeal followed.

**Motion to Suppress**

¶4        On appeal, Dean argues the trial court erred in denying his motion to suppress the evidence secured from execution of the search warrant. "We review the court's decision 'for abuse of discretion if it involves a discretionary issue, but review constitutional issues and purely legal issues de novo.'" *State v. Gay*, 214 Ariz. 214, ¶ 4, 150 P.3d 787, 790 (App. 2007), *quoting State v. Booker*, 212 Ariz. 502, ¶ 10, 135 P.3d 57, 59 (App. 2006).

¶5        The trial court found the warrant deficient because the affidavit, which referred only to an allegation of molestation

---

[2]The affidavit also alleged that the molestation occurred in a residence owned by Dean's parents, and not the trailer the detective sought to search.

[3]This is the extent of the information presented at the suppression hearing.  All other facts presented by the dissent were not introduced at the hearing on the motion to suppress and are therefore outside the scope of our review.  *McClennen*,  239  Ariz. 521, ¶ 4, 373 P.3d at 540.

[4]Although the molestation of C.D. was the basis for the search warrant, Dean was not charged with that offense in this case.

occurring at another location eighteen months earlier, "did not establish probable cause that [Dean] possessed child pornography on his computer in July 2012." The state does not dispute this finding. The court nonetheless concluded that the warrant was sufficiently particular to be relied upon under the good-faith exception articulated in *United States v. Leon*, 468 U.S. 897 (1984), and denied Dean's motion to suppress.[5]

¶6 In *Leon*, the Supreme Court concluded that, in general, evidence seized by law enforcement officers acting in good faith, but in reliance on a faulty warrant, should not be suppressed. *Id.* at 922. The court then established four exceptions to that general rule:

> (1) when a magistrate is misled by information that the affiant knew was false or would have known was false but for his or her reckless disregard for the truth; (2) when the issuing magistrate "wholly abandon[s]" his or her judicial role; (3) when a warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when a warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid."

*State v. Hyde*, 186 Ariz. 252, 273, 921 P.2d 655, 676 (1996), *quoting Leon*, 468 U.S. at 923 (alterations in *Hyde*).

¶7 On appeal, Dean claims the fourth *Leon* exception applies here because the "warrant lacks particularity in describing the places to be searched and the items to be seized." We agree. In *United States v. Spilotro*, the Ninth Circuit articulated a three-factor test to determine whether a description of items to be seized is

---

[5]Because we consider only the evidence admitted at the suppression hearing, *Brown*, 239 Ariz. 521, ¶ 4, 373 P.3d at 540, we do not consider whether a second search warrant, introduced into evidence at the trial, authorized the seizure.

sufficiently particular to support an officer's good-faith belief in the validity of the warrant:

> (1) whether probable cause exists to seize all items of a particular type described in the warrant, (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not, and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.

800 F.2d 959, 963 (9th Cir. 1986) (citations omitted).

¶8　　　As to the first *Spilotro* factor, whether there was probable cause to seize a certain type of item described in the warrant, 800 F.2d at 963, the trial court found there was not. As noted above, the state has not challenged this finding on appeal. We nonetheless consider this factor in accordance with our obligation to uphold the trial court if it is correct for any reason. *State v. Valenzuela*, 239 Ariz. 299, ¶ 35, 371 P.3d 627, 638 (2016).

¶9　　　In the affidavit seeking a search warrant, the detective stated that in 2010 Dean had anally sodomized a six- or seven-year-old boy. The alleged incident took place at the home of Dean's parents, in the attic. Although the allegations certainly provided probable cause to believe Dean had committed child molestation or sexual conduct with a minor, nothing about these facts provided probable cause to believe Dean possessed child pornography eighteen months later, much less at any particular location. *See United States v. Hodson*, 543 F.3d 286, 292 (6th Cir. 2008) ("[I]t is beyond dispute that the warrant was defective for lack of probable cause—[the detective] established probable cause for one crime (child molestation) but designed and requested a search for evidence of an entirely different crime (child pornography)."); Carissa Byrne Hessick, *Disentangling Child Pornography from Child Sex Abuse*, 88 Wash. U. L. Rev. 853, 875 (2011) ("[E]mpirical literature is unable to

validate the assumption that there is a causal connection between possession of child pornography and child sex abuse.").

¶10        The dissent suggests that we may consider information not presented to the magistrate, but known to the officer, in evaluating whether there was probable cause to search under the first *Spilotro* factor.  Courts are currently split on the issue of whether a reviewing court may look beyond the four corners of the affidavit seeking a search warrant in determining whether an officer relied on a warrant in good faith.  *Compare United States v. Martin*, 297 F.3d 1308, 1318 (11th Cir. 2002) (reviewing court may look beyond affidavit to any information known by the officer), *with United States v. Frazier*, 423 F.3d 526, 535-36 (6th Cir. 2005) (reviewing court may consider information not contained in affidavit if it was presented to the magistrate), *and United States v. Luong*, 470 F.3d 898, 904-05 (9th Cir. 2006) (reviewing court may not consider information beyond four corners of affidavit).

¶11        But, even assuming arguendo we could consider information known to the officer, but not included in the affidavit or presented to the magistrate, the officer still lacked probable cause to believe Dean possessed child pornography.  Here, the detective knew, but did not advise the magistrate, that Dean was on parole for sexual assault of a minor for an incident which had occurred sixteen years earlier.  In that incident, Dean had taken photographs of the victim.  However, the facts underlying the prior incident provided no greater evidence that Dean possessed child pornography on his computer than the facts of the instant case.  And the victim in this case, C.D., although forensically interviewed, never asserted that he was either photographed or shown pornography by Dean.  Accordingly, even if we consider the facts known by the detective that were not included in the affidavit, the warrant is still lacking in probable cause to believe Dean possessed child pornography at all, much less at his home, a location where none of the alleged criminal acts occurred.

¶12        The second factor, whether the warrant provided sufficient guidance to officers conducting the search, focuses on whether the warrant "specified the crime to be investigated, the specific places to be searched, and the types of evidence to be

seized." *Dawson v. City of Seattle*, 435 F.3d 1054, 1064 (9th Cir. 2006). Specificity in a warrant "prevents officers from engaging in general, exploratory searches by limiting their discretion and providing specific guidance as to what can and cannot be searched and seized." *United States v. Adjani*, 452 F.3d 1140, 1147 (9th Cir. 2006); *see State v. Adams*, 197 Ariz. 569, ¶ 25, 5 P.3d 903, 908 (App. 2000).

¶13        The warrant at issue here described four categories of items to be seized, two of which are relevant to this discussion:

> A. Any and all electronic devices and associated materials capable of producing, manipulating, sending, receiving, and/or storing electronic files, media and/or digital images which may be stored in (i.e. computers, cameras, cell phones, thumb drives, etc.).

> B. Any and all items which visually depict minors engaged in exploitive exhibition or any and all other sexual conduct such as, but not limited to, posing nude.

¶14        Category A allowed officers to search all of Dean's computer records without any limitations on what files could be seized or how those files "related to specific criminal activity." *United States v. Kow*, 58 F.3d 423, 425-26, 427 (9th Cir. 1995); *see United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir. 2005) ("[W]arrants for computer searches must affirmatively limit the search to evidence of specific . . . crimes or specific types of material."). The trial court correctly concluded that this was impermissibly broad. On appeal, the state has not challenged this conclusion.

¶15        The primary dispute on appeal is whether category B, "[a]ny and all items which visually depict minors engaged in exploitive exhibition," was sufficiently particular to authorize a

search of a computer.[6] Dean argues this category instead "refer[s] to items such as printed photographs, books, magazines, or other illicit printed material depicting minors." In making this claim, Dean distinguishes between printed material, which officers can immediately determine to be illicit or not, and computer files, which cannot so readily be distinguished.

¶16 Because of the privacy interests at stake in computers, and the large amount of personal information available therein, we likewise conclude that a warrant that does not specify that officers intend to search a computer is not sufficiently particular to authorize such a search. *See United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013) ("Where . . . the property to be searched is a computer hard drive, the particularity requirement assumes even greater importance."); *United States v. Christie*, 717 F.3d 1156, 1164 (10th Cir. 2013) ("[T]he particularity requirement and its underlying purposes are fully engaged when investigators seek to search a personal computer."). Here, category B of the warrant does not specify that a computer is one of the "items" to be searched for visual depictions of "minors engaged in exploitive exhibition."

¶17 In *United States v. Giberson*, 527 F.3d 882, 884 (9th Cir. 2008), an official conducted a search of a defendant's residence pursuant to a warrant that authorized him to search for certain

---

[6]The state claims Dean has forfeited his argument because in his motion to suppress below, he did not make the specific claim that category B, the only category of the warrant found to be valid by the trial court, was not sufficiently particular to authorize a search of a computer. But Dean raised the issue of particularity to the trial court. The state responded to the claim that the warrant did not authorize seizure of the computer. The trial court ruled on this issue of particularity. In short, Dean squarely presented the *claim* we now address to the trial court and the trial court reached its merits. Once a claim is properly raised below, appellate briefing and argument need not be a precise facsimile of the briefing and argument occurring at the trial court level. No purpose would be served by finding the issue forfeited. *See State v. Granados*, 235 Ariz. 321, ¶ 19, 332 P.3d 68, 73-74 (App. 2014); *State v. Vannoy*, 177 Ariz. 206, 210, 866 P.2d 874, 878 (App. 1993).

documents. The defendant claimed that, because the warrant did not authorize a search of his computer, it lacked sufficient particularity. *Id.* at 886. The court noted the officers had probable cause to believe the computer would contain the documents sought and they "merely secured the computer while they waited to get a second warrant that would specifically authorize searching the computer's files." *Id.* at 889. However, in *United States v. Payton*, the court clarified that in the absence of the circumstances highlighted in *Giberson*, a warrant must explicitly authorize a search of a computer. *Payton*, 573 F.3d 859, 864 (9th Cir. 2009).

¶18 None of the circumstances present in *Giberson* are present here. Based on the evidence within the scope of our review, the officers did not merely seize the computer while they obtained a warrant to search it, and the officer requesting the warrant did not have probable cause to believe Dean had child pornography. *See* 527 F.3d at 889. Accordingly, the second *Spilotro* factor also weighs against the state.

¶19 Finally, we must assess whether it was possible for the state to describe the items sought with greater particularity, the last *Spilotro* factor. As to category A, the state could have specified that it wanted to search Dean's computers and electronic devices for child pornography. As to category B, the state could have specified that "computers" were included as part of the "items" to be searched. *See United States v. Mann*, 389 F.3d 869, 878 (9th Cir. 2004) (warrant was sufficiently particular, in part, because "officers had no additional information available that would have allowed them to describe the items more particularly at the time the warrant was issued"). Here, the warrant lacked particularity because category A adequately articulated the items to be searched, including computers, but placed no limitation on the specific evidence sought. By contrast, category B described the evidence sought but lacked specificity on the items to be searched.[7]

---

[7]The state has not asserted, either at trial or on appeal, that we may read category B as informing or limiting category A. *See State v. Crowley*, 202 Ariz. 80, ¶ 32, 41 P.3d 618, 629 (App. 2002) (state has burden "to prove that the good faith exception to the exclusionary

**¶20** Because all three *Spilotro* factors weigh against the state, we conclude the warrant here was not sufficiently particular. The remaining question, then, is whether the warrant was so lacking in particularity that it was not objectively reasonable for an officer to rely on it. *Spilotro*, 800 F.2d at 968. This court has previously held that a "search warrant which does not particularly describe either the place to be searched or the items to be seized is not facially valid, and the police cannot rely on it in good faith." *State v. Williams*, 184 Ariz. 405, 407, 909 P.2d 472, 474 (App. 1995). "As an irreducible minimum, a proper warrant must allow the executing officers to distinguish between items that may and may not be seized." *United States v. Leary*, 846 F.2d 592, 602 (10th Cir. 1988). Moreover, case law has cautioned officers that warrants authorizing computer searches must be afforded careful scrutiny regarding particularity. *See Galpin*, 720 F.3d at 446; *Christie*, 717 F.3d at 1164; *see also United States v. George*, 975 F.2d 72, 77-78 (2d Cir. 1992) (precedent may be used in determining whether warrant could be relied upon in good faith); *cf. Riley v. California*, ___ U.S. ___, ___, 134 S. Ct. 2473, 2488-89 (2014) (noting privacy interests in cell phones); *State v. Peoples*, 240 Ariz. 245, ¶ 15, 378 P.3d 421, 426 (2016) ("Cell phones are intrinsically private . . . ."). Accordingly, we conclude it was not "objectively reasonable" for officers to rely on the warrant and the good-faith exception does not apply. *See Williams*, 184 Ariz. at 407 n.3, 909 P.2d at 474 n.3.

**¶21** In the trial court, the state argued as an alternative ground for upholding the search that Dean was on parole at the time and "may have given consent to searches by law enforcement of his residence as a condition of his parole." The state now argues that

---

rule applies"). Moreover, the warrant included two additional, distinct categories of items sought—namely, records of criminal activity and items used for luring children, which discredits any theory that category B is intended to inform or limit category A. And, if category B is simply intended to inform category A, the warrant then would not authorize seizure of any print materials such as photographs or magazines containing child pornography. This rebuts any suggestion that the categories should be read in conjunction with one another.

we should remand this case for a determination of whether the search was permissible on that ground. While the state briefly noted this argument in its response to Dean's motion to suppress, it also stated: "If the State can develop this theory the evidence will be presented at the evidentiary hearing." But at the evidentiary hearing, the state did not present any evidence regarding the terms of Dean's parole in Missouri. The state therefore did not present the trial court with the evidence necessary to make a finding on this issue and did not meet its burden of demonstrating the lawfulness of the search on this ground. *See* Ariz. R. Crim. P. 16.2(b); *Hyde*, 186 Ariz. at 266, 268, 921 P.2d at 669, 671 (in challenging search warrant, defendant bears burden of production but state bears burden of persuasion); *State v. Boteo-Flores*, 230 Ariz. 551, ¶ 10, 288 P.3d 111, 114 (App. 2012); *cf. United States v. Dickler*, 64 F.3d 818, 832 (3d Cir. 1995) ("[W]here the government has the burden of production and persuasion . . . its case should ordinarily have to stand or fall on the record it makes the first time around.").

**The Dissent**

**¶22**		The dissent suggests the primary issue before us is whether the officer's investigation developed sufficient probable cause to support the issuance of the warrant, rather than whether the warrant was sufficiently particular. The dissent posits that if such cause existed, regardless of what information was presented to the magistrate, then the officer acted in good faith when executing the defective warrant. As noted above, we face unsettled law on the question of what portions of the officer's knowledge we may consider in evaluating an officer's good faith. And, without resolving that question, we have conducted our analysis on the probable cause factor with the assumption that all such facts may be considered.[8] We simply disagree with the premise that all allegations of sexual conduct with a minor, regardless of their specific nature, and regardless of whether an officer has articulated any case-specific nexus between the two crimes, necessarily provide

---

[8]The dissent suggests we should resolve the issue. Because the issue is one of first impression in Arizona, because neither party has raised or briefed it, and because resolving it is not necessary to decide the case before us, we decline to do so.

probable cause for the search of a defendant's computer for child pornography.

**¶23**　　　But there are other factual constraints we are duty-bound to enforce in evaluating any motion to suppress on appeal. In his dissent, our colleague acknowledges that we may consider only information that was presented at the hearing on the motion to suppress. *See Brown*, 239 Ariz. 521, ¶ 4, 373 P.3d at 540. He nevertheless considers the entire trial court record. Importantly, any factual material not presented at the suppression hearing would not have been developed by its proponent, subjected to cross-examination, or considered by the trial court as a basis for its ruling. At any rate, this limitation is a rule of appellate review set forth by our supreme court, which we are not at liberty to disregard. *See id.*; *State v. Smyers*, 207 Ariz. 314, n.4, 86 P.3d 370, 374 n.4 (2004).

**¶24**　　　Specifically, the dissent incorrectly asserts that we may consider the legal impact of a second search warrant that the state did not introduce at the suppression hearing. But not only did the state fail to present the second warrant at the hearing, the detective testified that the first warrant—the one Dean has challenged and we have addressed—was the only warrant pertinent to the case. Indeed, the trial court specifically inquired if there was an "amended, corrected, or modified warrant of any kind," and the detective replied, "No, your Honor."

**¶25**　　　The dissent nonetheless burdens the defendant with the responsibility to raise and address any impact of the second warrant on the application of the good-faith exception. But Dean presented a prima facie case for suppression on the grounds that that the warrant under which his computer was seized was invalid. *See* Ariz. R. Crim. P. 16.2(b). The ultimate burden of persuasion then fell to the state. *See id.* If the state sought to argue that any defect with the first warrant was ultimately remedied by the second warrant, it bore the duty to present that argument, and any factual information in support of it, to the trial court. To the contrary, the state has never argued, either below or on appeal, that the second warrant cures any defect in the first, and has waived this issue. *See State v. Brita*, 158 Ariz. 121, 124, 761 P.2d 1025, 1028 (1988) ("[T]he state, never having presented the issue to the trial court . . . has waived

it."). And, although we can affirm a trial court's ruling for any reason supported by the record, *see State v. Moreno*, 236 Ariz. 347, ¶ 5, 340 P.3d 426, 429 (App. 2014), we may not do so with reference to facts not properly in the record before us.[9]

**¶26** The dissent also asserts that the good-faith exception applies in the absence of "systemic or deliberate police misconduct," *infra* ¶ 34, and correctly observes that our record contains no evidence of any deliberate malfeasance by the officer here. But, in *Leon,* the Court specifically tailored the standard for applying the good-faith exception to the context of a defective warrant. The Court concluded that the standard is one of "objective good faith." *Leon*, 468 U.S. at 923. As we have observed in this context, "[s]ubjective good faith on the part of the officers is insufficient." *State v. Coats*, 165 Ariz. 154, 158, 797 P.2d 693, 697 (App. 1990); *accord State v. Williams*, 184 Ariz. 405, 408, 909 P.2d 472, 475 (App. 1995). Thus, the good-faith exception does not apply if the officer knew or "should have known" his actions were unconstitutional. *Hyde*, 186 Ariz. at 275, 921 P.2d at 678.

**¶27** As discussed above, *Leon* articulated four circumstances under which officers could make no claim that they had exercised "objective good faith." 468 U.S. at 923. And, in *Spilotro,* the court articulated three objective factors by which to evaluate whether, under *Leon*, a warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." 800 F.2d at 968, *quoting Leon*, 468 U.S. at 923. We submit that this is the correct analytical framework to evaluate the officer's actions here.

---

[9]The dissent likewise departs from our standard of appellate review when he looks outside the suppression hearing record to support the supposed common-sense connection between child molestation and child pornography, attempting to illustrate his point with the thousands of images found on Dean's computer. Such a temptation is precisely why search warrants are based on an "objective predetermination of probable cause" instead of the "far less reliable procedure o[f] an after-the-event justification for the . . . search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment." *Beck v. Ohio*, 379 U.S. 89, 96 (1964).

¶28 In that context, neither the officer's apparent inexperience nor lack of deliberate misconduct relieved him of the duty to exercise objective good faith in executing the warrant. "[T]he [exclusionary] rule's primary purpose has been to deter law enforcement from carrying out unconstitutional searches and seizures." *United States v. Underwood*, 725 F.3d 1076, 1084 (9th Cir. 2013). It does not serve this purpose to allow the state to inadequately train its officers and then rely on that inadequate training in defending inadequate warrants. *See State v. Stoll*, 239 Ariz. 292, ¶ 20, 370 P.3d 1130, 1135 (App. 2016) (officer's reliance on inadequate training did not make conduct objectively reasonable).

¶29 The dissent relies on *United States v. Otero*, 563 F.3d 1127 (10th Cir. 2009), and *United States v. Riccardi*, 405 F.3d 852 (10th Cir. 2005), cases addressing "particularity" defects in a warrant, for its conclusion that the good-faith exception should apply here. A number of features distinguish this case from *Otero* and *Riccardi*.

¶30 In both of those cases, the officer seeking the warrant consulted with an attorney to ensure the warrant was sufficient, a factor which the court referred to as "one of the more important facts." *Otero*, 563 F.3d at 1135. Here, the detective was unsure whether he had sought assistance from a more experienced officer, and certainly did not consult an attorney. In *Otero*, the warrant consisted of two sections: a category of "items to be seized," which detailed items related to credit card fraud, and a category of "computer items to be seized," which authorized the seizure of all computers and devices capable of electronic media storage. *Id.* at 1129-30. The officers who executed the warrant testified that they understood the first part of the warrant to be limited by the second. *Id.* at 1134. Here, as we have explained above, the warrant, read as a whole, actually appears to expand, rather than to limit, the category authorizing search of Dean's computer. *Supra* n.7. And, unlike in *Otero*, the detective who drafted the warrant and executed the search did not provide any testimony regarding his understanding of the limitations of the warrant.

¶31 Finally, the dissent claims that our application of the *Spilotro* factors amounts to a holding that any warrant lacking in particularity cannot be relied on in good faith. That characterization

14

is inaccurate. We conclude only that (1) a warrant that allows an officer to search all of a defendant's electronic materials without specifying what the officer is looking for may not be relied on in good faith, and (2) a warrant that seeks to search a computer must specifically state that a computer is among the items to be seized, and if it does not, it may not be relied on in good faith. These two principles are well established by our case law and should be known by any trained officer.

**Disposition**

¶32    For the foregoing reasons, we reverse the decision of the trial court as well as Dean's conviction and sentence for sexual exploitation of a minor.


M E T C A L F, Judge, dissenting:

¶33    Because I believe that the trial court properly denied the motion to suppress on the ground that the good-faith exception to the exclusionary rule applies, I respectfully dissent.

¶34    To summarize, the facts included in the affidavit showing that Dean had allegedly sexually molested a child are sufficient to show that the detective acted in objective good faith in obtaining a warrant to seize Dean's computer, particularly when coupled with facts that the detective had discovered but failed to include in his affidavit. Those additional facts are that Dean had been previously convicted of child molestation and had photographed his nude child victim. There is also a common-sense relationship between child molestation and child pornography. To the extent that the detective made mistakes in articulating probable cause to seize Dean's computer, they were neither systemic nor deliberate. Without evidence of systemic or deliberate police misconduct, the good-faith exception applies.

¶35    To explain my position, a more expansive recitation of the facts and procedural history of the case is required. On July 16, 2012, V.D. reported to a detective with the Cochise County Sheriff's Office that Dean had sexually molested her eight-year-old son, C.D.,

approximately eighteen months earlier. The detective interviewed V.D. and S.D., C.D.'s father, three days later. V.D. explained that in December 2010, C.D. had been living in a trailer with S.D. on property owned by Dean's parents. V.D. also explained that Dean had lived in a trailer on the same property and that S.D. had worked for Dean. S.D. told the detective he knew Dean to be a registered sex offender. Dean's alleged molestation of C.D. occurred in the attic of a duplex located on the same property.

¶36        The detective then interviewed a caseworker for the Arizona Child Protective Service[10] who had received a report a month earlier about C.D. from a local hospital. The hospital had reported that V.D. recently refused recommended in-patient care because she was concerned there would be no one to care for C.D. V.D. had told hospital workers that Dean was a pedophile. The detective interviewed a hospital employee who confirmed the account.

¶37        On July 24, 2012, the detective watched, by closed-circuit video monitoring, a child forensic interview of C.D. The child explained he had been at his aunt's duplex located on the same property watching cartoons. Dean was working in the attic of the duplex. C.D.'s aunt and father had left to buy cigarettes. Dean was making noise upstairs in the attic and C.D. asked him to stop. Dean asked C.D. to come upstairs, which he did. Dean then pulled down C.D.'s pants and underwear and molested him. Dean told C.D. not to say anything. C.D. said he had been afraid to tell anyone because he feared Dean would go back to prison. The detective did not believe that the forensic interviewer asked C.D. whether Dean photographed him or showed him pornography.

¶38        Two days later, on Saturday, July 26, 2012, the detective received a report from an Arizona parole board officer that had been prepared by the Missouri State Board of Probation. The Missouri probation report reflected that Dean had been convicted of several statutory rape and sodomy charges in 1998 in Missouri and had been sentenced to eighteen years in prison. The report said the

---

[10]Now the Department of Child Safety. *See* 2014 Ariz. Sess. Laws 2d Spec. Sess., ch. 1, §§ 6, 20, 54.

charges stemmed from Dean molesting his nine-year-old stepdaughter and her nine-year-old friend in 1996. Dean's stepdaughter told authorities that Dean had been molesting her since she was seven years old. The stepdaughter also told authorities that Dean took nude pictures of her and pictures of them while they were engaged in sexual activity.

¶39 On Tuesday, July 30, 2012, just two business days after receiving the documents from Missouri, the detective prepared an affidavit and search warrant and presented it to a Cochise County justice of the peace. Although the justice of the peace placed the detective under oath, the detective did not make any statements about the facts of the investigation that were not contained in his affidavit.

¶40 In his affidavit, the detective failed to include the facts he learned from the Missouri State Board of Probation, including that Dean had been convicted of child molestation in Missouri and had taken nude photographs of his child victim. The detective also failed to include that his training and experience taught him to look for computers in child sex cases, a fact he testified to during the suppression hearing.

¶41 The warrant authorized the detective to search Dean's automobile and a fifth-wheel trailer for, among other things, "[a]ny and all electronic devices and associated materials capable of producing, manipulating, sending, receiving, and/or storing electronic files, media and/or digital images which may be stored in (i.e. computers, cameras, cell phones, thumb drives, etc.)." The warrant also authorized the search for "[a]ny and all items which visually depict minors engaged in exploitative exhibition or any and all other sexual conduct such as, but not limited to, posing nude." The search of Dean's trailer resulted in the seizure of a laptop computer, a digital camera, three flip-style cellular telephones, and a notebook that referenced children in a sexual way.

¶42 In November 2012, after continuing to investigate the matter, the detective obtained a second search warrant from the same justice of the peace to search the contents of the electronic devices he had seized from Dean's trailer on July 30, 2012. The

detective's affidavit for the second search warrant identified additional facts to support the search of Dean's computer and other electronic equipment. Among those other facts were that the detective had received documents from Missouri, which he included with his affidavit, indicating Dean had been convicted of statutory rape and sodomy charges in 1998 and he had taken nude photographs of his child victim; Dean had been caught viewing child pornography on another person's computer; Dean had a VHS cassette tape of a movie about child sexual abuse that contained an image of a nude pre-adolescent female; and he had admitted to the detective that C.D. came up to the attic when he was there and that he thought no one else was at home at the time (although he denied any molestation had occurred).[11]

¶43 After obtaining the November warrant, the sheriff's department undertook a forensic examination of the computer and found images of child pornography on it.[12] The examination showed that Dean's computer contained over 4,000 digital images, "the majority" of which "depict[ed] minor females . . . and/or minor males engaged in sexual conduct[,] exploitive exhibition or sexually suggestive poses/clothing." Nearly 600 additional digital images depicted unknown minor females in such circumstances and fifty-two others depicted known exploited victims according to a national database on exploited children. The examination did not reveal any images of C.D. on Dean's computer.

¶44 The state charged Dean with ten counts of sexual exploitation of a minor by possessing visual depictions in which the minor is under fifteen years of age and engaged in exploitive exhibition or other sexual conduct. The state proceeded on one

[11]The facts stated in paragraphs 43 and 44 of the dissent are taken from evidence admitted at trial, but not offered or admitted during the suppression hearing. As discussed below, they are included to properly frame the issue on appeal.

[12]The majority criticizes my inclusion of a description of the child pornography found on Dean's computer. However, this is the evidence Dean's motion sought to suppress. It seems incongruous that we cannot discuss the evidence that is the subject of this appeal.

count at trial. Dean was convicted and sentenced to a twenty-one-year term of imprisonment.

¶45 The first issue on which I disagree with the majority opinion is in determining what search we are being asked to review. I agree that in reviewing whether the good-faith exception applies, we are limited to reviewing the evidence admitted at the suppression hearing. *Brown v. McClennen*, 239 Ariz. 521, ¶ 4, 373 P.3d 538, 540 (2016). But this should not prevent us from examining the entire trial court record to determine whether the parties have accurately stated the record to us, including what legal issues were and were not raised before the trial court.

¶46 In his motion to suppress, Dean only addressed the seizure of his computer pursuant to the July 30, 2012 warrant. He did not raise any issue with respect to the forensic search of the computer. Likewise, the state explained in its response to Dean's motion that it had seized the computer pursuant to the July 30 warrant, but that a second warrant had been obtained to search its contents. At the suppression hearing, the detective testified that the July 30 warrant had not been amended, corrected, or modified. The detective did not discuss the November warrant during the hearing, most likely because everyone understood that the only issue Dean raised before the trial court was the seizure of Dean's computer pursuant to the July 30 warrant.

¶47 On appeal, Dean conflates the seizure of his computer with the later forensic search of the computer that uncovered the existence of child pornography. This is of concern because the majority bases much of its analysis on the latter search even though Dean did not raise an issue regarding the second warrant which led to that search.

¶48 Because the pornographic images were obtained pursuant to a search warrant, Dean had the burden of going forward in his motion to suppress. *See* Ariz. R. Crim. P. 16.2(b) ("the prosecutor's burden of proof shall arise only after the defendant has come forward with evidence of specific circumstances which establish a prima facie case that the evidence taken should be suppressed"); *State v. Hyde*, 186 Ariz. 252, 270, 921 P.2d 655, 673

(1996) ("[I]f the challenged evidence was obtained under authority of a warrant, defendant bears the burden of going forward with some evidence to show that the challenged evidence was illegally obtained."). If Dean wanted to address issues beyond the July 30 warrant, it was his initial burden to raise them in his motion to suppress. By not raising the issue, he forfeited it. *State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005) (failure to object at trial forfeits right to appellate review except for prejudicial fundamental error).

**¶49** Dean could not limit his suppression motion to the first warrant, raise issues on appeal that can only be resolved by reviewing the second warrant, but then claim we cannot even acknowledge the existence of the second warrant because he did not raise it at the suppression hearing. Accordingly, the issue, properly framed, is whether the good-faith exception to the exclusionary rule applies to the seizure of Dean's computer pursuant to the July 30 warrant.

**¶50** The majority correctly acknowledges that the good-faith exception provides that evidence seized by law enforcement officers acting in good faith, but pursuant to a faulty warrant, should not be suppressed. *United States v. Leon*, 468 U.S. 897, 922 (1984). And it is further acknowledged the Supreme Court set out four exceptions to that general rule:

> (1) when a magistrate is misled by information that the affiant knew was false or would have known was false but for his or her reckless disregard for the truth; (2) when the issuing magistrate "wholly abandon[s]" his or her judicial role; (3) when a warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when a warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid."

*Hyde*, 186 Ariz. at 273, 921 P.2d at 676, *quoting Leon*, 468 U.S. at 923 (alterations in *Hyde*).

**¶51**        But I part company with the majority as to what we can consider in analyzing whether a law enforcement officer acted in good faith in executing a warrant that lacked probable cause. Many courts have considered evidence that the officer knew but failed to include in the affidavit. For example, the Eighth Circuit has stated "when assessing the officer's good faith reliance on a search warrant under the *Leon* good faith exception, we can look outside of the four corners of the affidavit and consider the totality of the circumstances, including what the officer knew but did not include in the affidavit." *United States v. Farlee*, 757 F.3d 810, 819 (8th Cir. 2014); *see also United States v. McKenzie-Gude*, 671 F.3d 452, 460 (4th Cir. 2011) ("*Leon* presents no barrier to holding that the experienced officers in this case, who swore out the affidavit and executed the search, acted with the requisite objective reasonableness when relying on uncontroverted facts known to them but inadvertently not presented to the magistrate."); *United States v. Martin*, 297 F.3d 1308, 1318 (11th Cir. 2002) ("[W]e can look beyond the four corners of the affidavit and search warrant to determine whether [the officer] reasonably relied upon the warrant."). This approach advances the purpose of the good-faith exception: to "limit the application of the exclusionary rule to those instances when it will most effectively serve to deter police misconduct." *State v. Edmonson*, 598 N.W.2d 450, 460-61 (Neb. 1999) ("[Because] this purpose is best served by viewing all of the circumstances surrounding the issuance and execution of the warrant, we conclude that in assessing the good faith of an officer's conducting a search pursuant to a warrant, an appellate court must look to the totality of the circumstances surrounding the issuance of the warrant, including information not contained within the four corners of the affidavit."); *see also Adams v. Commonwealth*, 657 S.E.2d 87, 94 (Va. 2008) ("The purpose of the good-faith exception is, therefore, best accomplished by looking at the totality of the circumstances surrounding the issuance and execution of the search warrant, [which] does, at a minimum, take into account information known to police officers that was not included in the search warrant affidavit.") (citation omitted). Thus, going beyond the four corners

of the affidavit in determining whether the officer acted in good faith is consistent with *Leon*'s admonition that in determining whether good faith applies, the court should consider all the circumstances. *See Leon*, 468 U.S. at 922 n.23.[13]

**¶52**    There is no evidence to suggest, and no party has argued, that either of the first two exceptions under *Leon* apply. Nothing indicates the magistrate was misled by information that the averring detective knew was false or would have known was false but for his reckless disregard for the truth. Nor did the issuing magistrate wholly abandon his judicial role.

**¶53**    The third exception under *Leon* applies when a warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. While the majority opinion states that it is only reviewing the fourth *Leon* exception, it addresses this third exception by finding that the detective's affidavit completely lacked probable cause by failing to link Dean's alleged molestation to whether he possessed child pornography on his computer.

**¶54**    But it is undisputed that the detective's affidavit establishes probable cause to show that Dean molested C.D., a minor child. The affidavit, standing alone, may not establish probable cause that Dean possessed child pornography on his computer. However, considering that Dean had been convicted of sexual molestation in Missouri, had taken nude photographs of his child victim in that Missouri case, and then had molested C.D. after being released from prison in Missouri, coupled with the common-sense relationship between child molestation and child pornography, the officer arguably had an objective good-faith belief that probable cause existed to seize Dean's computer. After all, probable cause

---

[13]The court overruled Dean's objection to the detective's testimony about the Missouri evidence at the suppression hearing. On appeal, Dean again argues that the court could not go beyond the four corners of the affidavit in determining whether the good-faith exception applies. Accordingly, this court should decide whether we can consider the Missouri evidence in determining if the detective acted in good faith.

means that facts and circumstances "would warrant a man of reasonable caution in the belief that the items to be seized were in the stated place." *State v. Summerlin*, 138 Ariz. 426, 431, 675 P.2d 686, 691 (1983), *quoting United States v. Lucarz*, 430 F.2d 1051, 1055 (9th Cir. 1970); *see also Brinegar v. United States*, 338 U.S. 160, 175-76 (1949) (Probable cause means "a reasonable ground for belief of guilt," which is "'less than evidence which would justify condemnation' or conviction" but "more than bare suspicion."), *quoting Carroll v. United States*, 267 U.S. 132, 161 (1925); *Locke v. United States*, 11 U.S. 339, 348 (1913), *see also Maryland v. Pringle*, 540 U.S. 366, 371 (2003) ("The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." But "'[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt,'" and "the belief of guilt must be particularized with respect to the person to be searched or seized."), *quoting Brinegar*, 338 U.S. at 175 (alteration in *Pringle*). The detective had developed reasonable grounds to believe that Dean's computer may have held evidence of a crime even if he failed to include all the facts in his affidavit.

¶55        Such a holding is consistent with a Second Circuit case in which the court concluded that an eighteen-year-old conviction for child molestation was not sufficient to establish probable cause to believe the defendant possessed child pornography, but was sufficient to prove that the officer acted in good faith when he obtained a warrant on that basis. *United States v. Falso*, 544 F.3d 110, 128 (2d Cir. 2008). Interestingly, the concurring judge found a sufficiently strong link between child molestation and child pornography to support a finding of probable cause. *Id*. at 129-32 (J. Livingston, concurring). In coming to that decision, the concurring judge cited a congressional finding in the Child Pornography Prevention Act of 1996, relied on in a previous decision, that there is "a strong correlation between child pornography offenders and molesters of children" and that the "correlation between collection of child pornography and actual child abuse is too real and too grave to ignore." *Id*., *quoting United States v. Brand*, 467 F.3d 179, 198 n.17 (2d Cir. 2006).

¶56          Likewise, the Eighth Circuit has concluded "[t]here is an intuitive relationship between acts such as child molestation or enticement and possession of child pornography.  Child pornography is in many cases simply an electronic record of child molestation."  *United States v. Colbert*, 605 F.3d 573, 578 (8th Cir. 2010); *see also Probable Cause to Protect Children:  The Connection Between Child Molestation and Child Pornography*, 36 B.C. J.L. & Soc. Just. 287, 310-11 (2016) (sufficient empirical evidence supports conclusion that relationship exists between child molestation and child pornography so that evidence of child molestation should establish probable cause to search for child pornography).

¶57          Ultimately, the majority decision does not base its decision solely on the lack of probable cause, but also on the fourth exception to the good-faith exception: namely, that the July 30 warrant was so facially deficient that the detective could not reasonably presume it to be valid.  In coming to that conclusion, the majority opinion primarily relies on *United States v. Spilotro*, 800 F.2d 959 (9th Cir. 1986).

¶58          *Spilotro* does not squarely address the good-faith exception.  Indeed, in *Spilotro*, the trial court granted the defendant's motion to suppress before the Supreme Court's ruling in *Leon* and then, in the "interests of finality," decided not to revisit the issue after *Leon* was decided.  *Id.* at 962.  The central issue in *Spilotro* was not good faith but rather whether the warrants "describe[d] the items to be seized with sufficient particularity to be valid under the Fourth Amendment."  *Id.* at 963.  The court concluded that "the warrants . . . d[id] not describe the items to be seized with sufficient particularity, and we cannot conscientiously distinguish this case from others in which we have held warrants invalid because of their general terms."  *Id.* at 964.  Having found that the warrant was not sufficiently particular, the Ninth Circuit only cursorily addressed the good-faith exception.  The law of the good-faith exception has developed significantly since *Spilotro* was decided thirty years ago.  It is not the authority upon which to establish a rule for Arizona.

¶59          More modern cases have addressed the issue of when a warrant to search a computer is so facially deficient that officers could not rely on it in good faith.  For example, the Tenth Circuit has

held "[n]ot every deficient warrant . . . will be so deficient that an officer would lack an objectively reasonable basis for relying upon it. 'Even if the court finds the warrant to be facially invalid . . . it "must also review the text of the warrant and the circumstances of the search to ascertain whether the agents might have reasonably presumed it to be valid."'" *United States v. Otero*, 563 F.3d 1127, 1134 (10th Cir. 2009), *quoting United States v. Riccardi*, 405 F.3d 852, 863 (10th Cir. 2005) (alteration in *Riccardi*).

¶60        The facts supporting a finding that the detective acted in objective good faith even if the warrant was facially invalid are as follows. First, the detective had probable cause to believe that Dean possessed child pornography based on the Missouri evidence when combined with the current evidence of child molestation. Second, the detective who obtained the warrant executed it. Thus, he confined his search to evidence that was related to the child molestation investigation. There is no indication that he seized any items that did not relate to the child molestation investigation. This is important because as the court found in *Riccardi*, limiting a search to evidence relevant to the matter under investigation is a factor that weighs in favor of finding good faith. 405 F.3d at 861.

¶61        Third, the warrant, when read as a whole, clearly indicates that the detective was searching for evidence of child pornography on Dean's computer. *See United States v. Conley*, 4 F.3d 1200, 1208 (3d Cir. 1993) (search warrant should be read as a whole, in context, and not in isolation). The first paragraph describing the things to be seized identified electronic devices capable of storing digital images or files. The second paragraph identified items that depict minors engaged in exploitative exhibition, sexual contact, or nude. Had the detective combined these two paragraphs into one, there would have been no doubt that the warrant was sufficiently particular to justify searching Dean's computer for child pornography. The fact that the detective wrote them in two separate paragraphs should not determine the outcome.

¶62        Fourth, the detective did not search the contents of the computer based on the July 30 warrant. This shows he did not use the warrant as an excuse to examine private data unrelated to the child molestation investigation. Fifth, there is no evidence the

detective made any false or misleading statements in his affidavit. He was inexperienced, and drafted an affidavit that in retrospect was inadequate to the task at hand. The good-faith exception should apply in such a circumstance. *See generally United States v. Zimmerman*, 277 F.3d 426, 436 (3d Cir. 2002) ("[S]uppression should not be ordered where an officer, acting in objective good faith, has obtained a warrant without probable cause because in such cases only marginal deterrent purposes will be served which 'cannot justify the substantial costs of exclusion.'"), *quoting Leon*, 468 U.S. at 922.

¶63　　　And finally, as the Supreme Court held in *Herring v. United States*, "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." 555 U.S. 135, 144 (2009). Exclusion is not a necessary consequence of a Fourth Amendment violation. *Id.* at 141. There must be "deliberate, reckless, or grossly negligent conduct or in some circumstances recurring or systemic negligence." *Id.* at 144; *see also United States v. Davis*, 564 U.S. 229, 238 (2011) (affirming *Herring*'s holding that police mistakes must be more than isolated negligence to justify exclusion); *State v. Valenzuela*, 239 Ariz. 299, ¶ 35, 371 P.3d 627, 638 (2016) (citing *Herring* and *Davis* for the proposition that police conduct must be sufficiently deliberate to justify exclusion). There is no evidence of deliberate, reckless, or grossly negligent police misconduct in this case, a fact that the majority concedes. Nor is there evidence of recurring or systemic negligence. Thus, this case is unlike *State v. Stoll*, 239 Ariz. 292, 370 P.3d 1130 (App. 2016), in which the court found lack of good faith due to systemic mistakes in training officers on the proper application of the motor vehicle laws. Contrary to *Herring*, *Davis*, and *Valenzuela*, the majority opinion does not weigh the relatively small mistakes the detective made in drafting the affidavit and warrant against the high cost of "letting [a] guilty and possibly dangerous defendant[] go free—something that 'offends basic concepts of the criminal justice system.'" *Herring*, 555 U.S. at 141, *quoting Leon*, 468 U.S. at 908.

¶64        The majority opinion applies *Leon's* fourth exception to the good-faith exception too broadly and without regard to the substantial costs to society of allowing a dangerous defendant to escape punishment.  If adopted, this would result in the suppression of evidence in any case in which the warrant was not sufficiently particular.  But the Supreme Court held in *Leon* that the exclusionary rule should only apply in "unusual cases."  468 U.S. at 918.  This is not that unusual case.

¶65        Accordingly, I respectfully dissent.